**WLH MANAGEMENT CORP., d/b/a Warren's Lobster House**

v.

**TOWN OF KITTERY et al.**

Supreme Judicial Court of Maine.

Argued March 2, 1994.

Decided March 31, 1994.

K. Douglas Erdman (orally), Verrill & Dana, Portland, for plaintiff.

Duncan McEachern (orally), McEachern & Thornhill, Kittery, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

ROBERTS, Justice.

WLH Management Corp., d/b/a Warren's Lobster House, (the corporation) appeals from a judgment entered in the Superior Court (York County, *Saufley, J.*) affirming the decision of the Zoning Board of Appeals of the Town of Kittery to deny the corporation's application for a building permit to erect a permanent canopy over an outdoor deck at its restaurant. The corporation contends that the board erred as a matter of law in concluding that the proposed canopy (1) failed to conform to section 8.17 of the

Town's zoning ordinance;[1] (2) was a prohibited expansion of a "non-water dependent activity"; (3) was a prohibited expansion of a structure; and (4) would generate a need for increased parking spaces in an already congested area. We agree with the corporation and vacate the judgment.

In September 1992 the corporation applied to the Code Enforcement Officer (CEO) for a permit to erect a permanent metal frame over the restaurant deck, which would be covered with a seasonal canvas canopy and siding in inclement weather. The CEO denied the request and the corporation appealed to the board.

At a public hearing in November 1992, the board heard testimony from the CEO that parking in the area was "tight," with occasional overflow into the surrounding areas. The board denied the corporation's application after concluding that the proposed canopy (1) was not in conformance with section 8.17(d) of the ordinance;[2] (2) was a substantial expansion of nonwater-dependent activity"[3]; (3) was a prohibited expansion of a nonconforming structure; and (4) "would require more parking in this heavily congested area." The corporation appealed pursuant to M.R.Civ.P. 80B; the Superior Court affirmed.

■ When the Superior Court acts as an intermediate appellate tribunal, we directly review the board's decision for error of law, abuse of discretion, or findings not supported by substantial evidence in the record. *Town of Vienna v. Kokernak*, 612 A.2d 870, 872 (Me.1992).

■ The board erred in each of its conclusions. First, the board concluded that section 8.17(d) prohibited the canopy. The restaurant, although admittedly nonwater-dependent, is a lawful nonconforming use. Section 8.17(d) does not apply. The canopy would be a permissible expansion of that use pursuant to sections 7.3.2.1 to 7.3.2.3 of the ordinance.[4] *See Boivin v. Town of Sanford*, 588 A.2d 1197, 1199 (Me.1991) ("mere increase in the intensity or volume of business is not an unlawful expansion of a preexisting, nonconforming use"); *Frost v. Lucey*, 231 A.2d 441, 448–49 (Me.1967) (increase in hours of use not a prohibited expansion of use unless specifically prohibited by the ordinance). There is nothing in the record that suggests the canopy would fail to comply with the dimensional requirements of section

1. Kittery, Me., Land Use and Development Code Zoning Ordinance (June 13, 1977).

2. In late 1990 the Town adopted section 8.17, which governs piers, docks, wharves, marinas, and other uses projecting into water bodies. That section provides in pertinent part:

In accordance with M.R.S.A., Title 38, paragraph 435–449, all dimensional and other standards (excluding setbacks from water bodies) of this Code shall apply to structures and uses projecting into a water body beyond the normal high water mark. In addition, the following standard[ ] shall apply: ... (d) The facility shall not be larger than the minimum dimension necessary to carry on the activity or use, which shall be a water-dependent use.
Ordinance, ch. 8, § 8.17 (Dec. 15, 1990).

3. "Functionally water-dependent uses" are defined as those uses

that require, for their primary purpose, location on submerged lands or that require direct access to, or location in, coastal waters and which cannot be located away from these waters. These uses include commercial and recreational fishing and boating facilities, finfish and shellfish processing, fish storage and retail and wholesale marketing facilities, waterfront dock and port facilities, shipyards and boat building facilities, marinas, navigation aids, basins and channels, industrial uses dependent upon water-borne transportation or requiring large volumes of cooling or processing water that cannot reasonably be located or operated at an inland site and uses which primarily provide general public access to marine or tidal waters.
38 M.R.S.A. § 436–A(6) (1989).

4. Section 7.3.2.1 of the ordinance provides that "[a] nonconforming use shall not be extended within a building or to any portion of the floor area that was not occupied by such use on July 13, 1977." Section 7.3.2.2 provides that "[a] nonconforming use shall not be extended to any building or land area other than the one(s) occupied by such use on July 13, 1977." Section 7.3.2.3 provides that: "In the case of any legally existing use, created as a result of a legally approved development between July 13, 1977 and April 26, 1990, which becomes nonconforming as a direct result of implementation of this code, shall be afforded the same protections as contained herein as for those protected (grandfathered) uses in existence prior to July 13, 1977." Ordinance, ch. 7, §§ 7.3.2.1–7.3.2.3 (Nov. 14, 1990).

8.17. The canopy would not be "larger than the minimum dimension necessary," but would be contoured to the deck currently used for outdoor service.

■ Second, the board concluded that section 8.17's limitation of use to a "water-dependent activity" applied to the corporation. Because the restaurant had been in existence many years before the ordinance was adopted, its activity was "grandfathered" and therefore was a lawful nonconforming use pursuant to section 7.3.2.1.

■ Third, the board concluded that the canopy would be a prohibited expansion of a nonconforming structure. Even if the canopy could be characterized as an expansion of a structure, as opposed to an expansion of use, there is nothing in the record to show that the expansion would violate any requirements in sections 8.17 or 7.3.3.1.[5] Setback requirements are inapplicable and no surface area has been enlarged.

■ Finally, although some board members expressed concern about parking, the board made no finding that the corporation did not provide the minimum number of parking spaces required by the ordinance. There was no evidence presented that the corporation does not comply with the parking requirements. Indeed, the board did not accept the corporation's offer to present evidence on the status of its parking facilities. For the board to deny the corporation's permit based on alleged parking problems is clear error. *F.S. Plummer Co. v. Town of Cape Elizabeth*, 612 A.2d 856, 859–60 (Me. 1992) (ordinance may not be applied in an arbitrary and capricious manner); *see also Restivo v. Princeton Constr. Co.*, 223 Md. 516, 165 A.2d 766, 770 (1960) (if a plan is in compliance with all the provisions of a zoning ordinance, the board has no authority to deny permit on general grounds).

Having complied with the relevant sections of the ordinance, the corporation is entitled to its permit.

The entry is:

Judgment vacated.

Remanded with direction to enter a judgment reversing the decision of the Zoning Board of Appeals.

All concurring.

---

5. Section 7.3.3.1 provides in part that "[a] nonconforming building may be repaired or maintained and may be enlarged in conformity with the dimensional requirements, such as setback, height, etc., as contained in this Code." The section also authorizes the board to permit modification of proposed nonconforming enlargements. Ordinance, ch. 7, § 7.3.3.1 (Nov. 14, 1990).