Peter K. ROBERTS

v.

TOWN OF PHIPPSBURG, et al.

Supreme Judicial Court of Maine.

Argued March 14, 1994.

Decided May 16, 1994.

Mary Lou Ciolfi (orally), Brunswick, for plaintiff.

Edward F. Bradley, Jr. (orally), Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ., and COLLINS, A.R.J.*

COLLINS, Active Retired Justice.

The Town of Phippsburg appeals from a judgment entered in the Superior Court (Sagadahoc County, *McKinley, A.R.J.*) which vacated a decision of the Phippsburg Harbor Commission. The Town argues that the trial court erred in finding that the actions of the Phippsburg Harbor Master, in ordering Peter K. Roberts to relocate his mooring, were unauthorized by the Phippsburg Harbor Ordinance. The Ordinance authorizes the Harbor Master's action. We vacate the judgment and remand for affirmance of the decision of the Harbor Commission.

Roberts's mooring, which is located in one of the Town's harbors, was in place and used prior to March 1, 1990. In 1991, the Town adopted a Harbor Ordinance which "grandfathered" moorings installed or used prior to March 1, 1990. Phippsburg, Me., Harbor Ordinance 6(B) (March 16, 1991). On March 23, 1992, Henry Alexander submitted an application for a mooring to be placed near Roberts's mooring which was approved by the Town Harbor Master. After Alexander's mooring became entangled with Roberts's mooring, the Harbor Master recommended that Alexander's mooring be moved "as far North/Northwest as possible without risk of grounding out at low water" and that Roberts's "mooring be moved West/Southwest with enough room to accommodate all boats

* Justice Collins sat at oral argument and participated in the initial conference while he was a justice, and, on order of the Chief Justice was authorized to continue his participation in his capacity of Active Retired Justice.

in that general area to swing without risk of collision." Roberts appealed the Harbor Master's recommendation to the Harbor Commission. After a public hearing and an on-site inspection, the Harbor Commission affirmed the Harbor Master's decision and ordered Roberts to move his mooring accordingly.[1] Pursuant to M.R.Civ.P. 80B, Roberts appealed the decision of the Harbor Commission to the Superior Court and the court reversed, finding that the Ordinance did not authorize the Harbor Master to order the relocation of Roberts's grandfathered mooring. The Town appeals from that judgment.

■■■ When, as in this case, the Superior Court acts as an appellate tribunal, we directly review the decision of the municipal commission. *WLH Management Corp. v. Town of Kittery,* 639 A.2d 108 (Me.1994). In addition, we find that the following analysis is appropriate:

> The meaning of terms or expressions in an ordinance is a question of law for the court. The terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole. On appeal, the construction of terms or expressions in an ordinance is given de novo review.

*Gerald v. Town of York,* 589 A.2d 1272, 1274 (Me.1991) (citations omitted).[2]

■ Section 6(B) of the Ordinance provides:

> No new moorings shall be installed or maintained in Harbors designated for regulation by the Harbor Commission until the mooring location shall be registered and approved by the Harbor Commission or its agents, the harbor master or assis-

tants. A new mooring is any mooring installed or used in a regulated harbor for the first time after March 1, 1990. In the event that usage of a Harbor shall require regulation by the Harbor Commission in subsequent years after the adoption of this ordinance, any existing moorings shall be registered with the Harbor Commission within six months of its designation as a regulated harbor. *Moorings installed or used prior to March 1, 1990 are grandfathered and may remain, subject to other provisions of this ordinance.* Moorings installed after March 1, 1990 shall be subject to the requirements and priorities of this ordinance.

(emphasis added). Because Roberts's mooring was installed and used prior to March 1, 1990, his mooring is "grandfathered and may remain, subject to other provisions of [the] ordinance." This right to maintain a mooring is not absolute. Section 6(B) expressly states that grandfathered moorings "may remain, *subject to other provisions of this ordinance.*" (emphasis added). Thus, the Ordinance must be examined to determine if any provisions authorize the Harbor Master to order the relocation of Roberts's grandfathered mooring.

38 M.R.S.A. §§ 1–13 (1989 & Supp.1993) govern harbor masters. Section 1 provides:

> The municipal officers of a town, on request by any person desiring mooring privileges or regulation of mooring privileges for boats or vessels, *shall appoint a harbor master* for a term of not less than one year, *who shall be subject to all the duties and liabilities of that office as prescribed by state law, municipal ordinances and*

---

1. Neither the recommendation of the Harbor Master, nor the decision of the Harbor Commission, indicates the factual reasons underlying their decisions. Thus, the factual reasons for the decisions must be gleaned from the transcript of the public hearing. The Harbor Commission discussed the following issues: an admission of some fault on the part of the Harbor Master who allowed Alexander's mooring to be placed without checking out the location before hand; the congestion of the portion of the harbor in question; and, the fact that the present location of both moorings is too close and would cause boats to rub together. Additionally, it appears

that the Harbor Commission considered how the moorings would affect Alexander's access to his pier.

2. *See Dyer v. Town of Cumberland,* 632 A.2d 145, 148 (Me.1993); *Pitcher v. Town of Wayne,* 599 A.2d 1155, 1156–57 (Me.1991); *George D. Ballard, Bldr. v. City of Westbrook,* 502 A.2d 476, 480 (Me.1985); *Putnam v. Town of Hampden,* 495 A.2d 785, 787 (Me.1985); *Camplin v. Town of York,* 471 A.2d 1035, 1037–38 (Me.1984); *LaPointe v. City of Saco,* 419 A.2d 1013, 1015 (Me.1980).

*regulations adopted by the municipal offi-cers. . . .*

38 M.R.S.A. § 1 (1989) (emphasis added). Section 3 describes one duty of harbor masters.

In all harbors wherein channel lines have been established by the municipal officers, as provided in section 2, and in all other coastal and tidal waters, harbors and great ponds where mooring rights of individuals are claimed to be invaded and protection is sought of the harbor master, the harbor master shall assign and indicate only to the masters or owners of boats and vessels the location that they may occupy for mooring purposes and *shall change the location of those moorings from time to time when the crowded condition of that harbor or great pond, the need to conform to section 7–A or other conditions render the change desirable.* . . .

38 M.R.S.A. § 3 (Supp.1993) (emphasis added). Section 7 describes how Title 38 interacts with municipal ordinances.

*Nothing in this subchapter may be construed to be a limitation on the authority of municipalities to enact ordinances to regulate the assignment or placement of moorings and other activities in their harbors.* These ordinances may include, but need not be limited to: A process for assigning mooring privileges and determining the location of moorings; a waiting list for the assignment of mooring privileges; a fee schedule; construction standards for moorings; time limits on the mooring of vessels; a process for appeals from decisions of the harbor master; and provisions which establish a harbor commission or committee to administer the ordinance or ordinances and oversee the duties of the harbor master. . . .

38 M.R.S.A. § 7 (1989) (emphasis added). This provision gives municipalities great flexibility to regulate the placement of moorings.

---

**3.** Section 4(C) states:

If it finds overcrowding, conflicts or the potential for same, the Harbor Master shall assign mooring spaces *consistent with state and federal law* and the provisions of this ordinance and in accordance with the priorities ordained by this ordinance.

---

When looking at the Ordinance, two sections indicate an intent to incorporate the provisions of Title 38 that concern a harbor master's duties.[3] One of the duties to which a harbor master is subject is 38 M.R.S.A. § 3 which provides that a harbor master " . . . shall change the location of those moorings from time to time when the crowded condition of that harbor . . . or other conditions render the change desirable." We conclude that 38 M.R.S.A. § 3 is incorporated by sections 4(C) and 5 of the Ordinance, and therefore a mooring grandfathered by the Ordinance is subject to the Harbor Master's control. Accordingly, we conclude that the Ordinance authorizes the Harbor Master's movement of Roberts's grandfathered mooring.

The entry is:

Judgment vacated. Remanded for entry of a judgment affirming the decision of the Harbor Commission.

All concurring.

---

(emphasis added).

Section 5 reads:

"[Harbor Masters] *shall perform the duties prescribed by Title 38, MRSA* and enforce the provisions of this ordinance and the regulations adopted by the Harbor Commission."

(emphasis added).