**Earl BUKER,**

v.

**TOWN OF SWEDEN, et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs June 23, 1994.

Decided July 19, 1994.

---

Susan Farnsworth, Farnsworth & Associates, Hallowell, for plaintiff.

David R. Hastings, Hastings Law Office, P.A., Fryeburg, Robert C. Santomenna, Drummond & Drummond, Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

RUDMAN, Justice.

Earl Buker appeals from the entry of a judgment in the Superior Court (Oxford County, *Saufley, J.*) affirming the denial by the Town of Sweden Planning Board of his application for a conditional use permit. M.R.Civ.P. 80B. We agree with the Planning Board that Buker's proposal to remove underground water from his property does not meet the definition of "mineral extraction," which is allowed under the Town's zoning ordinance as a conditional use, and therefore we affirm the judgment.

In July 1990 Earl Buker applied to the Planning Board for a conditional use permit that would allow him to pipe and transport large quantities of water from an underground spring on his property. After some preliminary discussions the Planning Board suspended consideration of Buker's application in light of a state statute prohibiting the transportation of water beyond the boundaries of a municipality.[1] The Planning Board rejected Buker's request that it grant him a permit contingent upon his receiving state approval of his "Sweden Springs" project.

In February 1992 the Department of Human Services authorized Buker to transport water. *Centamore v. Commissioner, Dept. of Human Servs.*, 634 A.2d 950 (Me.1993). Buker then returned to the Planning Board to seek a conditional use permit. The Planning Board discussed the viability of Sweden Springs several times during the next few months, raising several questions and requesting information from Buker and his consultants. At a public hearing in September 1992 several citizens, including abutting landowners, spoke in opposition to the project, with most objecting to the expected increase in heavy truck traffic over lightly traveled rural roads.

Shortly after the public hearing the Planning Board voted unanimously to deny Buker's application for a conditional use permit for removal of water on the basis that it was not a mining operation and therefore was not a use permitted under the zoning ordinance. Buker filed a petition for review of the Planning Board's action in the Superior Court, pursuant to M.R.Civ.P. 80B. Abutting landowners Jane and Leo Marx and William and Lois Centamore filed a motion to intervene, which was granted. M.R.Civ.P. 24(a). The court affirmed the Planning Board's decision and Buker's appeal to this court was timely.

I.

When the Superior Court acts as an intermediate appellate tribunal, as in the instant case, we review the Planning Board's decision directly for error of law, abuse of discretion, or findings not supported by substantial evidence in the record. *WLH Management Corp. v. Town of Kittery*, 639 A.2d 108, 109 (Me.1994). Buker argues that the Planning Board erred as a matter of law when it ruled that the proposed removal of spring water is not "mineral extraction" as that term is defined in the Town of Sweden Zoning and Land Use Ordinance. When reviewing the meaning of a term used in an ordinance we must construe it reasonably

---

1. The statute reads in pertinent part:
   Except as otherwise provided in this section, no person may transport water for commercial purposes by pipeline or other conduit or by tank truck or in a container, greater in size than 10 gallons, beyond the boundaries of the municipality or township in which water is naturally located or any bordering municipality or township.
   22 M.R.S.A. § 2660–A(1) (1992).

"with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole." *Gerald v. Town of York*, 589 A.2d 1272, 1274 (Me.1991). In reviewing the definition of "mineral extraction" and the objectives and structure of the zoning ordinance, we find that the Planning Board did not err when it ruled that the removal of subsurface water was not a conditional use permitted under the ordinance with the approval of the Planning Board.

■ The ordinance defines "mineral extraction" as: "Any operation within any calendar year which removes more than fifty (50) cubic yards of soil, topsoil, loam, sand, gravel, clay, rock, peat, minerals, metals or other like material from its natural location and to transport the product removed, away from the extraction site."[2] Contrary to Buker's argument, there is nothing in this definition that would compel the Planning Board to conclude that water should be included. The materials listed are all solid, and although they may share some characteristics with water at the molecular level, none of the substances listed suggests that water would be naturally included among them. *See Penobscot Nation v. Stilphen*, 461 A.2d 478, 489 (Me.1983) (under rule of *ejusdem generis*, a general term followed by a list of illustrations is assumed to embrace only concepts similar to the illustrations). Thus, Buker's alternative argument that water qualifies as "other like material" under the definition likewise fails.

Buker also argues that the Planning Board's denial of his application for a conditional use permit results in a blanket prohibition of the removal of large quantities of water, which would be irrational and inconsistent with the ordinance's allowance of large-scale removal of other materials, such as agricultural or timber products. This argument is unavailing. Sweden's zoning ordinance is intentionally restrictive in that it states: "Uses not specifically allowed as Permitted Uses or Conditional–Uses are prohibited." Moreover, Buker's property is located in a designated "Rural Preservation Zone," the purpose of which is "[t]o maintain Sweden's rural character and natural scenic beauty ... and to reduce development pressures upon certain of the Town's environmentally sensitive areas." In light of these stated objectives, it was reasonable for the Planning Board to deny Buker's application to use his property in the manner proposed.

## II.

■ Buker also argues that the Planning Board should be estopped from enforcing its zoning ordinance because he had relied to his detriment on the Planning Board's assertion that it would consider his permit application under the category of mineral extractions. We reject this argument. Not only does the evidence fail to support Buker's allegation that the Planning Board misled him, *see Town of Falmouth v. Long*, 578 A.2d 1168, 1170 (Me.1990), but he improperly brings the claim of equitable estoppel as an affirmative cause of action. We have held that equitable estoppel can be asserted against a municipality only as a defense and "cannot be used as a weapon of assault." *Waterville Homes v. Dept. of Transp.*, 589 A.2d 455, 457 (Me. 1991).

The entry is:

Judgment affirmed.

All concurring.

■

---

**2.** We reject Buker's argument that the term "mineral" is not defined and that therefore a dictionary definition of mineral must be substituted. The ordinance provides a definition of "mineral extraction," which includes a list of the types of materials the Town meant to include in this specific category, and therefore we need not resort to dictionary definitions. In any event, Buker relies on various dictionary definitions that are broad enough to include "water" but are not particularly helpful when they are read out of the specific context of the zoning ordinance. *See, e.g.,* Note, *Looking it Up: Dictionaries and Statutory Interpretation*, 107 Harv.L.Rev. 1437, 1445 (1994) ("[D]ictionaries are not perfect repositories of the ordinary meaning of statutory terms. Most obviously, dictionaries are secondary sources, exogenous to the statutory text.").