**KELLY & PICERNE, INC.**

v.

**WAL\*MART STORES, INC.
and City of Biddeford.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 26, 1995.

Decided May 25, 1995.

James P. Boone, Saco, for plaintiff.

William L. Plouffe, Drummond, Woodsum & MacMahon, Portland, Harry B. Center, II, Smith, Elliott, Smith & Garmey, Saco, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

ROBERTS, Justice.

In this consolidated appeal, Kelly & Picerne, Inc., appeals from the entry of judgments of the Superior Court (York County, *Fritzsche, J.*) in two cases affirming decisions of the City of Biddeford Zoning Board of Appeals.[1] It challenges (1) the board's finding that a proposed Wal*Mart store requires only site plan review and (2) the board's finding that the facade of the proposed store and a proposed partially unenclosed garden center comply with the City's site plan ordinance. We affirm.

In June 1993 Wal*Mart submitted an application for site plan review of a proposed store on Route 111 in Biddeford near exit 4 of the Maine Turnpike. The primary development was to be placed on a 38.4–acre parcel and include a 117,216–square–foot Wal*Mart store, a 4,383–square–foot tire, battery and oil center, and a 3,729–square–foot garden center. The development would be located within an I–3 zone, in which retail stores are a permitted use requiring only site plan review. Shopping centers and automobile repair facilities, however, require condi-

---

1. On joint motion of the parties, two cases filed in the Superior Court for York County involving the same parties but different legal issues (docket numbers CV–93–721 and CV–94–104) have been consolidated for purposes of appeal.

tional use approval in the I-3 zone. Biddeford, Me., Zoning Ordinance, Art. V, § 6, Table 5A (Nov. 20, 1990) [hereinafter Ordinance]. Initially, the planning board categorized the development as a "retail center," and planned to proceed with conditional use review. Later, in response to materials submitted by Wal*Mart, the planning board determined that the development was a single retail establishment and not a retail center. It proceeded with only site plan review.

Kelly & Picerne owns the Five Points Shopping Center, which is located on Route 111 about one mile from the site of the proposed Wal*Mart store. Kelly & Picerne appealed the planning board's decision to the zoning board of appeals. In addition to the question whether the development was a shopping center, Kelly & Picerne argued that the tire, battery and oil center was a "public garage" requiring independent conditional use approval pursuant to the ordinance. The board of appeals affirmed the planning board's decision to require only site plan review. It made no specific findings with respect to the public garage question, determining that its decision to proceed with site plan review was sufficient to resolve all outstanding issues.

Kelly & Picerne then filed a complaint in the Superior Court (docket number CV–93–721) seeking review of the board's decision pursuant to 30-A M.R.S.A. § 2691(3)(G) (Pamph.1994). The Superior Court affirmed the decision on the shopping center issue. It found that the tire, battery and oil center was a public garage pursuant to the ordinance, but that it was also an accessory use, requiring no conditional approval.

In the meantime, the planning board proceeded with its site plan review of the proposed development, which included a partially unenclosed garden center. In addition, the building facade was to be made of split-ribbed masonry. The zoning ordinance requires that buildings in the I-3 zone have brick or stone facades. It provides that other materials may be considered on a case-by-case basis, but such other materials must nonetheless "advance the City's intent to make the I-3 area a more attractive gateway to the City." Ordinance, Art. XI,

§ 5(B)(4)(a)(2). The ordinance also prohibits exterior storage and display in the I-3 zone. Ordinance, Art. V, § 2(e).

On October 22, 1993, the planning board gave conditional final approval to Wal*Mart's proposed development. Kelly & Picerne appealed the approval to the zoning board of appeals, claiming that Wal*Mart's proposed split-ribbed masonry facade and partially unenclosed garden center violated the ordinance. The board of appeals affirmed the planning board decision. Kelly & Picerne again sought review in the Superior Court (docket number CV–94–104) pursuant to 30-A M.R.S.A. § 2691(3)(G). The court affirmed the board's finding that the facility did not violate the ordinance.

Kelly & Picerne appealed both of the Superior Court rulings, and the cases have been consolidated for purposes of appeal.

## I.

### Conditional Use Review
#### A. Tire, Battery and Oil Center

■ Although Kelly & Picerne argues that the automotive center is a public garage requiring conditional use review, the term "public garage" appears nowhere in the land use tables that set forth permitted uses in each zone. Ordinance, Art. V, § 6, Table 5A. Resolution of the question whether the automotive center is a public garage therefore merely begs the question whether that use is permitted in the I-3 zone. The most closely analogous facility listed in the land use table is "automobile repair, sales," which is defined as "[a] business establishment engaged in general repair, engine rebuilding, parts replacement. Automotive repair shall not mean body, frame, or fender straightening and repair or painting and undercoating, nor the sale of gasoline, other motor fuels or oil." Ordinance, Art. II, § 2.

We review directly the planning board's implicit finding that the tire, battery and oil center is not an automobile repair facility to determine whether it is supported by substantial evidence in the record. See *WLH Management Corp. v. Town of Kittery*, 639 A.2d 108, 109 (Me.1994). The record in this

case supports a finding that the activities carried on at the tire, battery and oil center will be more limited than the activities contemplated by the ordinance definition of automobile repair. The record before the zoning board of appeals contained a letter from Wal*Mart's consulting engineer in which he explains that the services offered in the automotive center will be limited to sales and installation of batteries and tires and oil changes. Those activities are less expansive than the general automotive repairs contemplated by the ordinance.

The evidence also supports the conclusion that the automotive center is a "retail business," defined by the ordinance as "[a] business establishment engaged in the sale, rental, or lease of goods or services to the consumer for direct use or consumption and not for resale." Ordinance, Art. II, § 2. Operation of a retail business is a permitted use within the I–3 zone. Ordinance, Art. IV. Because the automotive center is a permitted use and not a conditional use within the meaning of the ordinance, we need not reach the question whether it could be permitted as an accessory use.

### B. *Shopping Center*

■ The ordinance defines a "shopping center," for which conditional use review is required in the I–3 zone, as "[a]ny concentration of two or more retail stores or service establishments under one ownership or management on a single lot or abutting/adjoining property." Ordinance, Art. II, § 2. The record contains evidence that the development will be one store with one management and under the control of Wal*Mart. That evidence is sufficient to support the conclusion that the development was to be a "retail establishment," as defined above, and not a "shopping center." *See WLH Management Corp. v. Town of Kittery,* 639 A.2d at 109.

### II.

*Facade and External Storage Requirements*

■ The question whether the development at issue in this case violates the facade restrictions and prohibition against external storage also calls for a factual inquiry. *Gold-*

*man v. Town of Lovell,* 592 A.2d 165, 168 (Me.1991). The planning board's conclusion that the proposed facade satisfied the zoning ordinance is supported by evidence in the record. Both the planning board and the board of appeals had large color sketches of the facade of the store. The board of appeals also had a letter from Wal*Mart's engineer that addressed the aesthetic appearance of the split-ribbed masonry facade and the development generally. According to the engineer, the landscaping and building were designed with particular emphasis on creating an attractive appearance and the proposed facade would be indistinguishable from brick or masonry to persons viewing the store from the road.

■ Similarly, the conclusion that the garden center does not involve exterior storage and display is supported by evidence in the record. The board had before it a detailed sketch of the garden center. It heard testimony that the center would sit on a cement slab surrounded by a permanent fence with metal pickets. It would be accessible only from within the store itself and would be partially covered by a metal canopy. Even the portion of the center without a metal roof would be covered by a temporary mesh roof during the months when items would be displayed there.

The entry is:

In CV–93–721 and in CV–94–104:

Judgment affirmed.

All concurring.