George HORN, et al.

v.

TOWN OF BOOTHBAY.

Supreme Judicial Court of Maine.

Argued Feb. 8, 1996.

Decided March 12, 1996.

F. Jay Meyer (orally), Thompson, McNaboe, Ashley & Bull, Portland, for Plaintiffs.

William H. Dale (orally), Jensen, Baird, Gardner & Henry, Portland, for Defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and DANA, JJ.

CLIFFORD, Justice.

The Town of Boothbay appeals from the judgment entered in the Superior Court (Lincoln County, *Marden, J.*) vacating the decision of the Boothbay Board of Appeals upholding the decision of the Boothbay Harbor Master ordering the removal of four moorings owned by George Horn. The Town contends that the court erred in vacating the Board's decision and ordering that the disputed moorings be placed back in the Little River. Because the Harbor Master lacked the statutory authority to remove Horn's grandfathered moorings, we affirm the judgment.

Horn is the lessee of the Spar Shed Marina, owned by plaintiff Lillian Egan and located on the Little River in Boothbay. On various dates, all prior to December 31, 1991,

---

Horn placed seven moorings in the Little River for use in conjunction with the marina. On June 18, 1992, pursuant to a determination by the Selectmen of the Town, Justin Smith, acting Harbor Master, wrote to Horn and Egan directing them to "remove four moorings in Little River, which are not permitted by the Town of Boothbay." Horn complied with the order and removed the four moorings, but he appealed Smith's directive to the Board. He argued before the Board that the Harbor Ordinance[1] adopted by the Town by grandfathering the four disputed moorings essentially permitted them and, therefore, Smith was without authority to order their removal. Following a hearing, the Board denied Horn's appeal, finding that, although all seven of Horn's moorings were grandfathered pursuant to the Ordinance, the Harbor Master had the authority to order their removal because they posed a safety hazard and because Horn had not previously received permits from the Harbor Master prior to their being grandfathered. Pursuant to M.R.Civ.P. 80B, Horn sought judicial review of the Board's decision. Following a hearing, the court vacated the decision of the Board and ordered that Horn be allowed to "relocate the four removed moorings to their original placements." This appeal by the Town followed.

■ When, as here, the Superior Court acts as an intermediate appellate tribunal, we review directly the decision of the Board. *Roberts v. Town of Phippsburg,* 642 A.2d 155, 156 (Me.1994) (citing *WLH Management Corp. v. Town of Kittery,* 639 A.2d 108 (Me.1994)).

■ Although we disagree with Horn that the provision of the Ordinance granting grandfather status to all seven of Horn's moorings precludes the Town from exercising *any* control over their placement, we agree that their *complete* removal was beyond the Harbor Master's authority.

Section 7 of the Harbor Master Statute, 38 M.R.S.A. §§ 1–13 (1989 & Supp.1995), provides in pertinent part:

Nothing in this subchapter may be construed to be a limitation on the authority of municipalities to enact ordinances to regulate the assignment or placement of moorings and other activities in their harbors. These ordinances may include, but need not be limited to: A process for assigning mooring privileges and determining the location of moorings. . . .

The Ordinance pursuant to which the Harbor Master is appointed provides that the powers of the Harbor Master are set forth in Titles 12, 17, and 38 of the revised statutes. This language in the Ordinance plainly expresses the Town's intent to incorporate the enumerated provisions of state law within the Ordinance. *See Roberts,* 642 A.2d at 157 (reference to Title 38 within ordinance is evidence of intent to incorporate its provisions related to Harbor Master duties).

The Town does not rely on either Title 12 or Title 17 in contending that the Harbor Master has the authority to order the removal of Horn's moorings. Rather, the Town contends that 38 M.R.S.A. § 3 grants by implication the authority to the Harbor Master to order the removal of the four moorings.[2] We disagree. Section 3 provides in pertinent part:

In all harbors wherein channel lines have been established by the municipal officers, as provided in section 2, and in all other coastal and tidal waters, harbors and great ponds where mooring rights of individuals are claimed to be invaded and protection is sought of the harbor master, the harbor master shall assign and indicate only to the masters or owners of boats and vessels the location that they may occupy for mooring purposes and shall *change* the location of those moorings from time to time when the crowded condition of that harbor or great pond . . . render[s] the *change* desirable.

---

1. The ordinance, adopted by the Town on May 4, 1992, provides in pertinent part:
   Mooring locations shall initially be assigned to those persons owning vessels and occupying mooring locations as of 1991.

2. Because the Board determined that the Ordinance grandfathered all of Horn's moorings, the Town's contention that the four disputed moorings were "unpermitted" does not merit discussion.

(Emphasis added.) Therefore, if "the crowded condition . . . render[ed] the change desirable," Smith, as acting Harbor Master, had the authority to *relocate* Horn's grandfathered moorings. The statute, however, does not authorize an order for the complete *removal* of moorings previously granted grandfather status.[3] *See Roberts*, 642 A.2d at 157 (relocation of grandfathered mooring is permissible). Because the Board's decision upholds the decision by the Harbor Master ordering removal of four of Horn's moorings, the court correctly identified it as error.[4] Should the Town wish to relocate any grandfathered moorings, it should proceed to do so pursuant to the authority set out in Title 38.

The entry is:

Judgment affirmed.

All concurring.

---

**3.** 38 M.R.S.A. § 3 provides that mooring privileges may be withheld for failure to pay a fee, a charge for services, or a penalty.

**4.** Because the Harbor Master exceeded his authority, we do not reach the findings of the Superior Court that there was insufficient evidence to support the Board's finding that Horn's four removed moorings posed a safety or navigation hazard, and that the Town's order was prompted by a discriminatory intent.