STATE OF MAINE
YORK, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-14-24

YVONNE HARRIS

Appellant,

v.                                                          **ORDER**

TOWN OF YORK, MAINE, and
AMBER HARRISON

Respondents.

## I. Background

### A. Procedural Posture

Petitioner Yvonne Harris brings this Rule 80B appeal from a decision of the Town of York Zoning Board of Appeals. The Board affirmed the Code Enforcement Officer's denial of a building permit.

### B. Facts

In 2008, Petitioner Yvonne Harris ("Petitioner" or "Harris") purchased 157 Long Beach Avenue, York, Maine ("the parcel" or "the property"). The property is situated in the RES-7 Base Zone within York's Shoreland Overlay District. The lot size totals 21,344 sq. ft. and has three buildings: (1) a 1,574 sq. ft. year-round Victorian structure ("the Victorian"), (2) a 764 sq. ft seasonal structure ("the seasonal building"), and (3) a 504 sq. ft. garage structure ("the garage"). Harris intended to renovate the buildings and convert them into three condominium units at the time she purchased the property.

1

Harris or persons working for her communicated with Code Enforcement Officers ("CEOs") in 2008 and 2009 about her intended plans. Harris relied on this information to hire contractors to renovate and engineers. In particular, the CEOs represented that Harris could convert the upstairs of the garage into a single-family dwelling unit. (R. 1-3.) A 2008 email states "You had indicated it would be acceptable to renovate the Garage/barn as a single family unit and keep the front house as a single family unit. Is this correct?" CEO Timothy DeCoteau replied: "Setting aside other issues such as setback, lot coverage, flood zone, building codes, etc. it's possible to relocate one of the dwelling units in the front building to over the garage." (R. 2.) A second email from 2009 states "if on the garage you cant [sic] tear it down or add up on existing [sic] structure can you make the garage space and the 2nd floor both residential space" and next to this appears "yes 10/5/09" handwritten with CEO DeCouteau's signature. (R. 1.) Harris proceeded to obtain plumbing and electrical permits and removed one of the dwelling units in the Victorian. She continued to communicate with Town officials, including CEO Benjamin McDougal, who in a 2012 email explained the process for applying for the various permits needed to move forward with the project. (R. 10.)

On May 15, 2014, Amber Harrison, the then-acting York CEO, issued Letter of Denial that denied Harris's building permit application because the expansion did not comply with density and shoreland zone setback requirements. (R. 12.) The RES-7 zone requires 12,000 sq. ft. per single-family dwelling unit. Because the CEO concluded Harris's proposed renovation would result in three single-family dwelling units, the 21,344 sq. ft. lot size fell short of the necessary 36,000 sq. ft. to accommodate three units. Harris timely appealed to the Zoning Board of Appeals ("the ZBA").

Harris testified before the ZBA that she had expended about $400,000 total on plans and renovations, including $75,000 on the Victorian. Harris communicated with prior CEOs and submitted building applications for the garage, but never obtained the permits. The ZBA affirmed the building permit denial by a 5-0 vote.

## II. Discussion

### A. Rule 80B Standard

This court reviews government agency decisions pursuant to Rule 80B for errors of law, abuse of discretion, or findings not supported by substantial evidence. *Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024. The party challenging the decision below has the burden of proof to overturn the decision. *Id.*

The court reviews the interpretation of municipal ordinances de novo. *Nugent v. Town of Camden*, 1998 ME 92, ¶ 7, 710 A.2d 245. "The terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the Ordinance as a whole." *Jordan v. City of Ellsworth*, 2003 ME 82, ¶ 9, 828 A.2d 768.

### B. The Operative Decision Under Review

When an appeal comes before the Superior Court after multiple decisions at the municipal level, the court reviews the operative decision directly. *Dunlop v. Town of Westport Island*, 2012 ME 22, ¶ 13, 37 A.3d 300. The court must determine which is the "operative" decision.

> If the Board of Appeals [properly] acted as a tribunal of original jurisdiction, that is, as factfinder and decision maker, we review its decision directly. If, however, the Board acted only in an appellate capacity, we review directly the decision of the [CEO], or other previous tribunal, not the Board of Appeals.

3

*Mills v. Town of Eliot*, 2008 ME 134, ¶ 13, 955 A.2d 258. The general rule is that the ZBA acts in a de novo capacity and thus renders the operative decision unless the municipal ordinance expressly provides otherwise. *Id.* ¶ 14. In York, appeals from a CEO's permit denial proceed to the Board of Appeals. York, Me., Ordinance § 18-A.4.G. ("Ordinance"). The ordinance expressly permits the ZBA to collect evidence, hear testimony, and act as a fact-finder. Ordinance § 18.8.3. While members of the ZBA made comments at the hearing that suggested they were merely reviewing the CEO's decision in an appellate capacity, the ZBA heard testimony from Harris, the CEO, and considered exhibits. The ZBA's decision is therefore the operative decision under review. *Mills*, 2008 ME 134, ¶ 15, 955 A.2d 258.

### C. The Three Structures and Existing Dwelling Units

Harris and the Town disagree as to how to characterize the dwellings on the property. In Harris' view, there is (and has been) a third dwelling unit on the property. The Town contends that there are two dwellings and Harris's proposed project would *add* a third dwelling unit to the garage, where one never existed. Both parties are partially correct.

When Harris purchased the property, the Victorian was classified as a two-family dwelling unit, while the seasonal structure was a single dwelling unit. The renovation project intended to "remove" a dwelling unit from the Victorian to the space above the garage. It was for this reason Harris communicated with town officials about plans to use the garage for a dwelling unit. In a 2008 email, CEO Timothy DeCoteau told Harris that the Victorian could be renovated to contain one dwelling unit and the unit removed could be placed above the garage, subject to applicable zoning regulations. (R. 2, 215.)

4

The ZBA first concluded the building permit was properly denied because Harris's lot is too small for three single-unit dwelling units under applicable density standards. Harris argues the ZBA erred in treating the proposal to re-locate the dwelling unit from the Victorian to the garage as an additional dwelling. (Pet.'s Brief 6.) In doing so, the Town included the unit in the total square footage calculation. The ordinance requires 12,000 sq. ft. minimum lot size for each one-family dwelling unit. Ordinance § 5.4.2.1. If a dwelling in the garage is included, Harris needs a lot size of at least 36,000 sq. ft. to have a total of three dwellings. The property, however, is only 21,344 sq. ft.

Harris mounts several arguments as to why the density requirements should not apply to the property. Harris argues CEO Amber Harrison made a mistake of fact when she determined that there were only two dwelling units. Harris also contends that two prior CEOs concluded there are three and the Town cannot reverse this finding. (Pet.'s Brief 6-7.)[1] As there were three existing dwelling units, the proposed use is either lawful or legally nonconforming and the density restrictions do not apply. (Pet.'s Brief 8-10.)[2] The Town argues Harris has failed to establish there was a legal or existing nonconforming use, and even if she could, the proposal to "move" the third unit to the garage would change the use and thus lose protection. (Resp.'s Brief 4-5.)

Assuming that three legal units existed on the property, this does not necessarily mean that Harris may proceed with plans for the garage. The "three" included the two units that existed in the Victorian prior to renovations. Whether Harris may lawfully have

---

[1] Harris's procedural argument that the ZBA cannot reverse the previous CEOs' decisions because the appeal window has run was not raised below and is therefore waived. *Tarason v. Town of S. Berwick*, 2005 ME 30, ¶ 8, 868 A.2d 230.

[2] Harris's arguments on this issue are somewhat confusing. Harris appears to argue that neither the use nor the lot is nonconforming, but elsewhere concedes that the proposed project is in fact a "nonconforming situation." (Pet.'s Brief 8-10.)

three units and whether one of those units may be put in the garage are separate questions.

Harris does not have a legal right to construct a dwelling in the garage. The preexisting nonconformity, if any, would allow Harris to have two units in the Victorian and one unit in the seasonal structure, not three single-unit dwellings in separate structures. There is a substantive difference between a two-family dwelling structure and two separate single-family dwelling structures. Both consist of "two" dwellings, but they are plainly regulated differently under the density ordinance. *See* Ordinance § 5.4.2.1. (detailing distinct minimum square footage requirements for two-family dwellings and single-family dwellings). Furthermore, the ordinances prohibit moving nonconforming uses from one part of a structure to another part of the same structure, Ordinance § 17.1.3.3., and nowhere permit an owner to take a nonconforming use or structure and effectively transfer or reassign that nonconformity to another conforming use or structure on the lot. Ordinance § 17.2.

Constructing a residential unit in the garage would clearly introduce a new use in a separate structure and constitute an "extension" or "expansion" of the nonconformity. *Shackford & Gooch, Inc. v. Town of Kennebunk*, 486 A.2d 102, 105 (Me. 1984); *see also* 8A McQuillin, *Municipal Corporations* § 25:220 (3d ed.) (stating that increasing the number of buildings in connection with a nonconforming use constitutes a prohibited enlargement of the use); *compare Keith v. Saco River Corridor Comm'n*, 464 A.2d 150, 156 (Me. 1983) (holding mere sale of preexisting nonconforming dwelling units would not change quality, character, degree, or intensity of established use). Adopting Harris's argument would allow property owners to freely move units between structures on their

6

property without obtaining zoning relief. Such a policy would offend the purpose of zoning, which aims to "eliminate nonconforming uses as speedily as justice will permit." *Id.*; *see also Gagne v. Inhabitants of City of Lewiston*, 281 A.2d 579, 581 (Me. 1971) ("The spirit of the zoning ordinances and regulations is to restrict rather than to increase any nonconforming uses.")

The ZBA therefore properly considered the garage proposal as a separate and distinct dwelling unit that was not protected as a lawful conforming dwelling. *See Wickenden v. Luboshutz*, 401 A.2d 995, 996 (Me. 1979) (deferring to Board of Appeals' determination that a studio structure was a preexisting nonconforming "dwelling"). The ZBA did not err in determining the proposal to install a dwelling unit in the garage was not a lawful, protected use and would contravene the density requirements.

## D. Whether the ZBA Properly Applied the Shoreland Ordinance

The second ground for denying the permit was a failure to comply with the Shoreland Ordinance setback, which the ZBA interpreted to prohibit expansion of accessory structures. Harris argues the ZBA erred. (Pet.'s Brief 11-14.) The relevant ordinance provision, "Expansions of Structures that Do Not Comply with Setback Requirements," refers only to "principal" structures. Ordinance § 8.3.11.4 ("[T]he portion of a *principal structure* that does not satisfy the required shoreland setback may be expanded only in accordance with the following provisions . . . .") (emphasis added). The ZBA concluded that because Section 8.3.11.4. only refers to principal structures, accessory structures may not expand. The ZBA found the garage is situated within 100 feet of a wetland, does not meet the setback requirement, and as an accessory structure cannot expand under Section 8.3.11.4.

7

Harris interprets the "plain language" of Section 8.3.11.4. to mean that accessory structures *may* be expanded subject to a limitation that any alteration cannot increase the structure's footprint more than 30%.[3] Harris relies in part on state law and points to 38 M.R.S. § 439-A(4), which states "all new principal and accessory structures" must meet setback requirements, but also allows accessory structures to expand, subject to the 30% limitation. As the renovation to the garage complies with the 30% limitation, Harris contends the ZBA erred in denying the building permit for failure to comply with the setback.

Section 8.3.11.4 appears to address only principal structures. Expansion of accessory structures is not expressly prohibited by the ordinances, but unlike principal structures, there are no standards for accessory structure expansion. As Harris emphasizes, under state law, a nonconforming accessory structure may expand subject to the 30% limitation. 38 M.R.S. § 439-A(4)(C). The statute, however, only allows accessory structures to expand "as long as other applicable standards of land use adopted by the municipality are met." *Id.* As discussed above, the Town's density requirements are not met. In any event, the plain terms of the ordinance do not explicitly embrace the state law standard that accessory structures may expand. The ZBA therefore did not err in sustaining the building permit denial.

### E. Equitable Estoppel

Harris lastly argues that even if the proposal does not meet zoning requirements, in light of the substantial expenditures made in reliance on representations by past CEOs, the Town should be equitably estopped from enforcing the zoning restrictions.

---

[3] Harris specifically designed the garage to comply with this 30% standard.

8

A municipality can be equitably estopped from zoning enforcement where (1) the statements or conduct of a municipal official induced the claimant to act, (2) the claimant relied on the statements to her detriment, and (3) that reliance was reasonable. *Tarason v. Town of S. Berwick*, 2005 ME 30, ¶ 15, 868 A.2d 230. Due to the policy implications, a party seeking to estop a municipality from enforcing an otherwise valid ordinance "bears a significant burden." *Id.*

The Town argues that Harris cannot rely on equitable estoppel as an affirmative cause of action to obtain the building permit. (Resp.'s Brief 8.) In *Buker v. Town of Sweden*, a landowner asserted equitable estoppel after the Town denied a conditional use permit. 644 A.2d 1042, 1044 (Me. 1994). In affirming the Town's decision, the Law Court noted that equitable estoppel "can be asserted against a municipality only as a defense and cannot be used as a weapon of assault." *Id.* The Law Court reaffirmed this principle in *Tarason v. Town of South Berwick* to conclude that a landowner could not affirmatively estop the municipality, but could only raise estoppel as a defense to an enforcement action. 2005 ME 30, ¶ 16, 868 A.2d 230.

Harris distinguishes *Tarason* and *Buker* on the grounds that she "already had a lawful third dwelling unit" and "the legality of the third dwelling unit was not one that implicated the issuance of a building permit." (Pet.'s Reply Brief 8.) Timothy DeCoteau, the prior CEO, represented that Harris could proceed with plans to move a dwelling unit from the Victorian into the garage. Harris contends that by relying on the CEO's statement that the property had three lawful units, she is now entitled to construct a third unit above the garage. This argument illustrates why equitable estoppel cannot be used offensively in zoning matters. Whether Harris had three pre-existing dwellings and

whether a dwelling may be located above the garage are separate questions. It would significantly hamper zoning uniformity if applicants like Harris could force a municipality to grant zoning relief to place a dwelling in any other existing structure on a lot irrespective of other applicable requirements. The Town was not required to grant Harris the permit she needed to construct the dwelling in the garage.

Harris complains that she has now lost the dwelling that was removed from the Victorian. (Pet.'s Brief 16-17.) The removal required permits to relocate plumbing, electrical, and other amenities in the structure. Harris testified that she has spent "about $400,000" on the project overall. (R. 231.) The record does not break down where and how Harris spent this sum. The expenditures specifically tied to the garage largely involved preparatory studies and surveys, not physical construction.

Harris's equitable estoppel claim ultimately concerns the construction to remove the dwelling from the Victorian rather than construction to add a dwelling in the garage.[4] Equitable estoppel protects property owners from zoning enforcement actions to remove a structure or cease a use *after* that use or structure is in existence. *See, e.g., City of Auburn v. Desgrosseilliers*, 578 A.2d 712 (Me. 1990). Equitable estoppel does not guarantee future relief when the owner makes preparatory expenditures knowing they still must satisfy substantive zoning requirements to obtain permits. *Tarason v. Town of S. Berwick*, 2005 ME 30, ¶ 17, 868 A.2d 230; *Kittery Retail Ventures, LLC v. Town of Kittery*, 2004 ME 65, ¶ 36, 856 A.2d 1183; *H.E. Sargent, Inc. v. Town of Wells*, 676 A.2d 920, 925 (Me. 1996). If in the future Harris reestablishes the second dwelling in the Victorian and the Town brings a zoning enforcement action, Harris could conceivably

---

[4] Harris fails to appreciate this distinction when she points to the loss of the dwelling in the Victorian and concludes equity requires allowing her to construct a dwelling in the garage.

10

assert equitable estoppel as a defense. But that is not the case before the court. The Town is not equitably estopped from denying Harris a building permit to create a new dwelling unit in the garage.

## III.   Conclusion

For the reasons stated, the court concludes the ZBA did not err in denying Harris a building permit to construct a single-unit dwelling in the garage structure. Harris may not assert equitable estoppel to force the Town to grant a permit for the proposal.

The entry shall be:

Petitioner's Rule 80B appeal is hereby DENIED. The ZBA's decision is AFFIRMED.

SO ORDERED.

DATE: April 22, 2015

John O'Neil, Jr.
Justice, Superior Court

11

AP-14-24

ATTORNEY FOR PLAINTIFF:
WILLIAM H DALE
JENSEN BAIRD GARDNER & HENRY
P O BOX 4510
PORTLAND ME  04112

ATTORNEY FOR DEFENDANT:
MARY E COSTIGAN
BERNSTEIN SHUR
P O BOX 9729
PORTLAND ME  04104