STATE OF MAINE

AROOSTOOK, ss

SUPERIOR COURT
CIVIL DOCKET
DOCKET NO. CARSC-CV-17-12

RICHARD CAYER and )
ANN CAYER )
       PLAINTIFFS )
vs. )
    )
    )
    )
    )
TOWN OF MADAWASKA )
       DEFENDANT )

ORDER ON PLAINTIFFS'
MOTION FOR SUMMARY
JUDGMENT

## INTRODUCTION

Before the Court is Plaintiff's Motion for Summary Judgment filed on May 3, 2017. On January 19, 2017 Plaintiffs filed a Complaint for Declaratory Judgment in which they ask the Court to order that the building permits issued by the Town of Madawaska, (hereafter referred to as the Town) remain valid and that the Stop work Order issued by the Town is null and void. In their Motion for Summary Judgment Plaintiffs ask the court to order that the building permits vested with them certain rights and remain valid and that the Town be estopped from asserting the permits expired. The parties have been in litigation of various forms for several years, and the facts involved in the disputes are lengthy and involved. However, the facts necessary to address this motion are quite straightforward and not in dispute. For the reason discussed herein, Plaintiffs' motion is denied.

1

## FACTS NOT IN DISPUTE

Plaintiffs are owners of property located at 57 Chapel Road, Lot 20, in the shoreland zone in Madawaska. (PSMF ¶1.)[1] On May 21, 2008 the Plaintiffs applied for a building permit regarding their camp on Lot 20.(PSMF ¶2.) Eventually the permit application was referred to the Planning board for review. (PSMF ¶5.) On July 28, 2008 Plaintiffs amended their application, and on August 25, 2008 the Planning Board accepted the application as amended. (PSMF ¶¶6-10.)

On May 22, 2012 Plaintiffs filed another permit application for an extension to the camp. (PSMF ¶12.) On May 29, 2012 the Town issued a permit which included a description of the project. (PSMF ¶13.) After receiving the permits the Plaintiffs began construction on the property, including foundation work and steel framing, at an approximate cost of $31,700. (PSMF ¶ 15.) On June 18, 2012 Plaintiffs applied for another permit, and the Code Enforcement Officer granted the permit with a project description. (PSMF ¶16.)[2] Work continued on the project after June 18, 2012.

On March 15, 2013 Plaintiffs applied for another permit for an expansion to the structure previously permitted on June 18, 2012. (PSMF ¶29.) On April 8, 2013 the Town's Code Enforcement Officer granted the permit for the requested expansion per the plan. (PSMF ¶30.)

---

[1] In this order Plaintiffs' Statement of Material Facts is cited as "PSMF" and Defendant's Opposing Statement of Material Facts is cited as "DOSMF".

[2] The details of the project description are not necessary for ruling on this motion.

On May 19, 2013 Plaintiffs started removal of a part of the camp. (PSMF ¶ 32.) On June 4, 2013 the Town issued to Plaintiffs a Notice of Violation, indicating a Stop Work Order was in force, and again on August 22, 2013 the Town notified the Plaintiffs the Stop Work Order remained in effect until resolution. (PSMF ¶¶ 33,46.) Plaintiffs opposed the Notice of Violation and Stop Work Order, but did cease further construction. (PSMF ¶¶ 37,51.) The parties engaged in meetings and discussions. (PSMF ¶38-44;47-48.) On September 18, 2013 Plaintiffs received a letter from the Town offering a Consent Agreement to resolve the alleged violations. (PSMF ¶49) Plaintiffs refused to enter a Consent Agreement. (PSMF ¶ 50.) As previously stated, the Plaintiffs opposed the allegations but had ceased construction. (PSMF ¶ 51.)

On April 22, 2014 Plaintiffs were served with a Land Use Citation and Complaint, which they removed to the Superior Court for a jury trial. (PSMF ¶¶52-53.) On September 7, 2016, the Land Use Citation and Complaint was dismissed with prejudice. (PSMF ¶55.)[3] Following the dismissal Plaintiffs met with Town's Code Enforcement Officer to confirm that they could continue/renew their building permit and removal of the Stop Work Order. (PSMF ¶ 56) The Code Enforcement Officer asked for information confirming the Complaint was dismissed with prejudice, which was provided by Plaintiff's counsel by a letter dated October 13, 2016. (PSMF ¶¶ 57-60.) The parties dispute whether or not the Town's Code Enforcement Officer ever responded to Plaintiff's request for confirmation that the project could continue and the Stop Work Order was not in effect. The Plaintiffs assert that the Town never responded while the Town asserts it told the Plaintiffs the permits had expired. (PSMF ¶61 and DOSMF ¶61.) But it

---

[3] Whether the matter was dismissed *by agreement* or *without objection by the Plaintiffs* is a distinction with no effect to the merits or outcome of this motion.

is clear that the Town's defense to this action and motion is that the permits had expired pursuant to Section 16 (F) of the Shoreland Zoning Ordinance. (DOSMF ¶¶66,68.)

DISCUSSION

Plaintiffs make two arguments why they are entitled to judgment. First, they assert that they acquired vested rights in the permits but that the Town interfered with those rights by issuing the Stop Work Order. Second, Plaintiffs assert that the Town is equitably estopped from revoking the permits or asserting the permits expired.

1.  Did the Plaintiffs acquire vested rights in the permits that cannot be revoked or terminated or expire?

The answer to this question is *no*. It may well be Plaintiffs acquired vested rights in the permits. As Plaintiffs state in their motion, for construction rights to vest, there must be actual commencement of significant construction, the commencement was undertaken in good faith with the intention to continue and complete the construction, and the commencement of construction was undertaken pursuant to a valid permit.

*Sahl v. Town of York*, 2000 ME 180. So, on the facts of this case, one could conclude rights had vested. The Town had issued permits, and the Plaintiffs commenced construction with all indications being there was an intention to complete the project. But that does not mean that the Town cannot take action or stop the construction if compliance issues arise. Indeed, Section 16(I)(2)(a) of the Shoreland Zoning Ordinance provides, in part:

> It shall be the duty of the Code Enforcement Officer to enforce the provisions of this Ordinance. If the Code Enforcement Officer shall find that any provision of this Ordinance is being violated, he or she shall notify in writing the person responsible for such violation, indicating the nature of the violation and ordering the action necessary to

4

correct it, including discontinuance of illegal use of land, buildings, and structures, or work being done, removal of illegal buildings or structures, and abatements of nuisance conditions.

In this case, the Town's issuance of the Notice of Violation and Stop Work Order, and later its issuance of the Land Use Citation and Complaint was done pursuant to Section 16(I)(2)(a). The cases cited by Plaintiffs in support of the vesting of construction rights all dealt with subsequent changes in ordinances which the towns attempted to enforce. See *Sahl v. Town of York*, 2000 ME 180; *Thomas v. Bangor Zoning Board of Appeals*, 381 A.2d 643 (Me. 1978); *Town of Sykesville v. West Shore Communications*, 677 A.2d 102 (Md.1996). This case does not involve a subsequent change in the ordinance. Plaintiffs have provided no legal authority to support their suggestion that a municipality cannot take action enforcement actions, including stoppage of work, when circumstances arise that raise concerns or allegations that the ordinance is being violated, even if those concerns or allegations prove to be unfounded. Certainly, that would be illogical as municipalities must be able to enforce their ordinances and compliance with building permits after such permits are issued.

Section 16 (F) of the Shoreland Zoning Ordinance provides:

> Permits shall expire one year from the date of issuance if a substantial part is not made in construction or in use of the property during that period. If a substantial part is made within one year of the issuance of the permit, the applicant shall have one additional year to complete the project.

The essence of Plaintiffs' argument and for them to prevail is that once construction rights vest in their permits, Section 16(F) or other completion deadlines are tolled or extended when a municipality brings an enforcement action that stops or delays work. However, no ordinances, statutes, rules or case law have been provided to support that view or argument. So, although

5

Plaintiffs rights in the permits may have vested, those rights can be terminated or expire, and they have not established in this motion that the Town's enforcement action and Stop Work Order results in a stay or extension of the completion deadlines set forth in Section 16(F).

2. Is the Town equitably estopped from asserting the permits have expired?

For an equitable estoppel claim to succeed, Plaintiffs must establish that (1) the statement or conduct of the Town induced them to act; (2) the reliance was detrimental; and (3) the reliance was reasonable. *Tarason v. Town of South Berwick,* 2005 ME 30, ¶15. However, equitable estoppel can be asserted against a municipality only as a defense and cannot be used as a weapon of assault. *Id.* at ¶16. See also *Waterville Homes, Inc.v. Maine DOT,*589 A.2d 455, 457 (Me. 1991); *Buker v. Town of Sweden,* 644 A.2d 1042, 1044 (Me. 1994). Plaintiffs cannot use equitable estoppel as a *claim* to prevent the Town from asserting the permits expired. In this case permits were issued and the Plaintiffs commenced work. But after the work was commenced the Town issued a Notice of Violation and Stop Work Order. Plaintiffs ceased work, and when a consent agreement could not be reached, the dispute went into litigation via a Land Use Citation and Complaint. That litigation came to a close with a dismissal with prejudice. After said dismissal, Plaintiffs did not resume construction but instead asked the Town to give confirmation that they could resume working and the Stop Work Order was not in effect. A question of fact remains in dispute whether or not the Town ever responded. But what is clear is that since the Land Use Citation and Complaint has been dismissed, the Plaintiffs have not done any work and the Town has not issued any violations or citations or Stop Work Orders. In other words, there

6

has been no action or conduct by the Town to *estop*.[4] In short, Plaintiffs cannot use equitable estoppel as claim or basis for whatever relief it is seeking in its declaratory judgment action, and cannot be a basis for granting Plaintiffs summary judgment. See *Grimmel Indus. v. Inhabitants of Topsham*, 2013 Me. Super. LEXIS 291.

Accordingly, Plaintiffs' Motion for Summary Judgment is denied. Because Plaintiffs' complaint is for Declaratory Judgment and not knowing what other theories or basis they seek declaratory relief, the Court declines to give the Town summary judgment as well.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Dated: December 4, 2017

_____
Justice, Superior Court

---

[4] The Court is not inviting litigation, but as an example, had Plaintiffs resumed work and the Town issued a Citation and Complaint alleging the permits had expired, *equitable estoppel* might be in play as a defense.

| | Attorney | Party | Representation Type | Representation Date |
|---|---|---|---|---|
| | **Bearor, Edmond** | Town Of Madawaska -... | Retained | 01/19/2017 |
| | **Rossignol, Luke** | Ann Cayer - 3 Plaintiff | Retained | 01/19/2017 |
| | **Rossignol, Luke** | Richard Cayer - 1 Plaint... | Retained | 01/19/2017 |