**Patrick C. JORDAN et al.**

v.

**CITY OF ELLSWORTH.**

Supreme Judicial Court of Maine.

Argued: Dec. 11, 2002.

Decided: July 3, 2003.

---

Peter R. Roy, (orally), Robert W. Laffin Jr., Roy, Beardsley, Williams, & Granger, LLC, Ellsworth, for appellants.

Wayne R. Foote, Bangor, for appellee.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA,* ALEXANDER, CALKINS, and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] Patrick and Rhonda Jordan appeal from the judgment of the Superior Court (Hancock County, *Gorman, J.*) affirming the City of Ellsworth Planning Board's denial of their application for a land development permit. They argue that (1) the Planning Board erred when it denied their application based on criteria not contained in the land use ordinance; and (2) there was insufficient evidence in the record to support the Planning Board's findings. We affirm the judgment.

---

* Although not available at oral argument, Justice Dana participated in this opinion. *See* M.R.App. R. 12(a) (stating that a "qualified justice may participate in a decision even though not present at oral argument").

## I. BACKGROUND

[¶ 2] The relevant facts are as follows. The Jordans own two acres of land in the Commercial and Light Industrial (C–LI) Zoning District in the City of Ellsworth. In the summer of 2001, the Jordans filed with the Planning Board an application for a conditional use land development permit for a project that was characterized as an apartment complex. The Planning Board approved this application, but the Zoning Board of Appeals, on appeal, vacated the approval because new residential apartments are a prohibited use in the C–LI District. The Jordans did not appeal that decision. Shortly thereafter, in October of 2001, the Jordans filed an application for another conditional use permit that consisted of a similar project that they referred to as a "residential suite hotel." [1] This proposed development consisted of an existing three-bedroom residential house and two buildings that contain six two-bedroom units and a seventy-two seat restaurant serving breakfast and lunch. Each unit included a full bathroom and a kitchen.

[¶ 3] The Planning Board reviewed the Jordans' application at a meeting on January 2, 2002. The primary issue at the hearing was whether the development was a "hotel" or a "multiple dwelling," the ordinance's term for an apartment building. Hotels are a permitted use within the C–LI District, whereas new apartment buildings are not. ELLSWORTH LAND USE ORDINANCE, Article X, §§ 6, 7, 10. During the meeting, the Board received testimony from the Jordans that the "hotel" would accommodate clients that stay for a single night as well as clients that stay for an indefinite period.

[¶ 4] The Board members questioned the Jordans to determine whether the use was consistent with that of an apartment or a hotel. The Board asked where the front desk would be located. The Jordans answered that there would not be a front desk, but the registration of guests and acceptance of payments would be done through the restaurant. When asked by the Board if the rooms would be cleaned daily, the Jordans answered that the cleaning would be performed "as needed" upon the guest's request. Finally, the Board asked what furnishings and services would be provided to the guests. The Jordans answered that the rooms would be furnished and the phone service would work with an extension to each room.

[¶ 5] The Board determined that the proposed structure was "not a hotel" based on two specific findings of fact: (1) "There is not a clear break between it being long-term lodging and in fact actual residences because there is no cutoff on length of stay" and (2) "There are full dwelling units in this building." The Jordans appealed the denial to the ZBA, which affirmed the Board's denial. The Jordans then filed an appeal pursuant to M.R. Civ. P. 80B with the Superior Court. The Superior Court affirmed the Board's denial, and the Jordans filed this appeal.

## II. DISCUSSION

■ [¶ 6] When the Superior Court acts as an intermediate court of appeals, we review directly the decision of the "tribunal of original jurisdiction, that is, [the] factfinder and decision maker." *Stewart v. Sedgwick*, 2000 ME 157, ¶ 4, 757 A.2d 773, 775. In the present case, the Planning Board received evidence and made a decision to deny the permit based on that

---

1. Although the project was understood to be nearly identical to the first proposal, the Board decided not to include the first application for an "apartment" with the application for a "hotel" because they were separate applications.

evidence. The ZBA, at the Jordans' request, reviewed that decision in an administrative appeal. Therefore, we review the reasoning and decision of the Planning Board. *See id.*

[¶ 7] The Jordans argue that the Board erred when it found that the proposed development was not a hotel. They assert the Board should not have asked questions relating to room service, billing for telephone and utilities, location of the front desk, and length of stay of the guests because they are not criteria in the ordinance's definition of hotel. Instead, they argue that the Board, based on the evidence presented by the Jordans, was compelled to find the development plan satisfied all the requirements in the definition of "hotel."

[¶ 8] The Jordans had the burden of persuading the Planning Board that the structure was a permitted use. ELLSWORTH LAND USE ORDINANCE, Article VI, § 3(F); *see also Lewis v. Town of Rockport*, 1998 ME 144, ¶ 15, 712 A.2d 1047, 1050 (holding burden on applicant to demonstrate project complies with provisions of shoreland zoning ordinance). The characterization of structures in applications for conditional use permits is a mixed question of law and fact. When there is no ambiguity in the language of the ordinance, we ordinarily review a Board's characterization of a structure as a finding of fact, giving deference to the Board's ultimate conclusion. *Goldman v. Town of Lovell*, 592 A.2d 165, 168 (Me.1991) (" '[W]hether or not the proposed structure or use meets the definition in the application thereof may be a matter of fact for initial Board determination." ' (quoting *Moyer v. Bd. of Zoning Appeals*, 233 A.2d

311, 318 (Me.1967)); *Springborn v. Town of Falmouth*, 2001 ME 57, ¶ 11, 769 A.2d 852, 856. This factual determination will only be overturned if it is not "adequately supported by evidence in the record." *Goldman*, 592 A.2d at 168–69.

[¶ 9] Interpretations of municipal ordinances, however, are questions of law subject to *de novo* review. *Nugent v. Town of Camden*, 1998 ME 92, ¶ 7, 710 A.2d 245, 247. "The terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole." *Roberts v. Town of Phippsburg*, 642 A.2d 155, 156 (Me.1994) (internal quotations and citations omitted). Thus, we review the interpretation of the ordinance *de novo*, but we afford the Board's ultimate characterization of the structure substantial deference.

[¶ 10] The ordinance defines "hotel" as follows: "A building or group of buildings having ten (10) or more *guest rooms* in which *lodging*, or meals and lodging, are offered for compensation ...." ELLSWORTH LAND USE ORDINANCE, Article II (emphasis added). None of the terms within this definition is defined. However, we are not required to disregard common sense when we interpret municipal ordinances. *Cf. Banks v. Maine RSA # 1*, 1998 ME 272, ¶ 4, 721 A.2d 655, 657 ("A court's interpretation of an ordinance must not create 'absurd, inconsistent, unreasonable or illogical results." ' (quoting *Melanson v. Belyea*, 1997 ME 150, ¶ 4, 698 A.2d 492, 493)). Using a common sense approach, we note that both the terms "guest rooms" and "lodging" imply that the residence is temporary.[2]

---

2. While "guest" is defined circularly as "a person who pays for the services of an establishment (as a hotel or restaurant)," the term

"lodging" is defined as "a *temporary* place to stay." WEBSTER'S NEW COLLEGIATE

We have previously found that the term "hotel" refers to residences of a "transient" nature, similarly implying a short or temporary residence. *Moyer*, 233 A.2d at 317–19. Thus, the Ellsworth ordinance defines "hotel" as an establishment with residence units that are temporary and shorter term.

[¶ 11] In contrast, a "multiple dwelling" is defined as: "A building designed or intended to be used, or used exclusively for residential occupancy by three (3) or more families living independently of one another and containing three (3) or more dwelling units, *including apartment buildings* and condominiums ...." ELLSWORTH LAND USE ORDINANCE, Article II (emphasis added). This definition uses the term "dwelling unit" to describe the residence units in this structure. A "dwelling unit" is defined as: "A room or suite of rooms used as a *habitation* which is separate from other such rooms or suites of rooms, and which contains independent living, cooking, sleeping, bathing, and sanitary facilities; includes ... *apartment house* ...." *Id.* (emphasis added). Thus a "dwelling unit" connotes permanence, in contrast to the temporary nature of the rooms in a hotel.

[¶ 12] The definition of "multiple dwelling" has another qualification that affects our characterization of the structure. A "dwelling" is defined as "[a]ny building ... *not including* a motel, *hotel*, inn, or similar use." *Id.* (emphasis added). Thus, an "apartment" cannot be a "hotel" and, logically, a "hotel" cannot be an "apartment." Therefore, even though there is a fine distinction between a "hotel" and an "apartment," the ordinance prohibited the Board from finding that the structure was both.

DICTIONARY 505, 670 (1979) (emphasis added).

[¶ 13] It was the Jordans' burden to prove that the structure was a permitted use. ELLSWORTH LAND USE ORDINANCE, Article VI, § 3(F). Having received facts regarding the nature of the residential units within the project and having concluded that those units were "dwelling units," and impliedly not "guest rooms," the Board concluded that the structure was "not a hotel." Further, the Board found that "[t]here is no clear break between it being long-term lodging and in fact actual residences," highlighting the Board's conclusion that the type of residence units in the Jordans' proposed structure would be permanent and longer term, not temporary. It was not error for the Board to find that the three-bedroom home and six two-bedroom living units were dwelling units, not the more temporary guest rooms found in a hotel.

The entry is:

Judgment affirmed.