STATE OF MAINE
CUMBERLAND,ss



SUPERIOR COURT
Civil Action
Docket No. AP- 08-11

A & M PARTNERS, LLC,

  PLAINTIFF

  v.

CITY OF PORTLAND,

  Respondent

**DECISION AND JUDGMENT**
**(M.R.Civ.P. 80B)**

## I. BEFORE THE COURT

This matter comes before the court for the second time on the petition of A&M Partners, LLC (A&M) renewed Rule 80B appeal from a decision of the Zoning Board of Appeals (ZBA) for the City of Portland (the City) denying A&M's building permit application. [1]

## II. PROCEDURAL HISTORY AND BACKGROUND

The petitioner is seeking to renovate a vacant and derelict automobile repair garage and convert it into an office building which it then intends to lease to the State of Maine for use as office space for State of Maine probation services.

The property is located in the City's B-2b Community Business Zone (the B-2b zone), a mixed-use area. According to section 14-181(b) of the City of Portland Code of Ordinances (the Ordinance), the "B-2b zone is intended to provide neighborhood and community retail, business and service establishments that are oriented to and built close to the street." Additionally, the B-2b zone is meant to accommodate "a more

---

[1] *See* this court's prior decision dated February 26, 2008, Docket No. AP-07-04.

compact urban development pattern" or "a neighborhood compatible commercial district" with "a pedestrian scale and character." *Id.*

A&M applied for a building permit and specified that the renovated structure would be used as "office space."[2] After initial approval from the City's Zoning Administrator, Marge Schmuckal (Schmuckal), A&M entered into a ten-year lease agreement with the State. However, Schmuckal subsequently reversed her decision and denied the permit after learning that the building would house government offices. A&M appealed her decision, but after a hearing on August 2, 2007, the ZBA agreed with Schmuckal, voting to deny the application. After appeal to this court, the case was remanded to the ZBA for factual findings. A second hearing was held on March 20, 2008, and the Board again denied A&M's application. It voted that the proposed use of the building is not included in §§ 14-182 and 14-183 and is not permitted in the B-2(b) zone. A&M then again appealed to this court.

## III. DISCUSSION

### A. Standard of Review

This court will uphold a board's decision unless that decision is an abuse of discretion, contrary to law or lacks the support of substantial evidence on the record. *Uliano v. Bd. of Envt.l Prot.*, 2005 ME 88, ¶¶ 6-7, 876 A.2d 16, 18. The interpretation of a zoning ordinance is a question of law that the court reviews *de novo*. *Brackett v. Town of Rangeley*, 2003 ME 109, ¶ 15, 831 A.2d 422, 427. However, the court may not substitute its own judgment for that of the Board on factual determinations. *Forbes v. Town of*

---

[2] The Ordinance allows for "general, business and professional offices, as defined in section 14-47" in the B-2b zone. City of Portland Code of Ordin. (Me.) § 14-182(b)(1) (2007). Section 14-47 defines the term "professional office," as "[t]he office of a doctor, dentist, optometrist, psychologist, accountant, lawyer, architect, engineer or similar professional." *Id.* at § 14-47. There is no definition provided in the Ordinance for "general office" or "business office." Similarly, there are no definitions for "municipal use", "county use" or "governmental use" even though those terms are used in the Ordinance and as political sub-divisions carry on a wide variety of public functions causing their properties to be subject to many different uses.

*Southwest Harbor*, 2001 ME 9, ¶ 6, 763 A.2d 1183, 1186. The burden of persuasion is on the party challenging a board's decision to show that the evidence compels a different result. *Twigg v. Town of Kennebunk*, 662 A.2d 914, 916 (Me. 1995).

## B. Petitioner's Intended Use of the Property

If the language of a municipal ordinance is unambiguous, the question of whether a structure meets the criteria for a certain defined classification is a question of fact for the Board. *Jordan v. City of Ellsworth*, 2003 ME 82, ¶ 8, 828 A.2d 768, 771. However, if there is ambiguity, the interpretation of the municipal ordinance is a question of law for the court. *Id.* ¶ 9, 828 A.2d at 771. As the Law Court has explained, "the terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole." *Id.* (quotations and citations omitted). The court should "look first to the plain language of the provision to be interpreted." *Gensheimer v. Town of Phippsburg*, 2002 ME 22, ¶ 22, 868 A.2d 161, 167. When any terms are "ambiguous or uncertain," the court should consider "the context within which the term appears." *Robinson v. Bd. of Appeals, Town of Kennebunk*, 356 A.2d 196, 198 (Me. 1976). The court also "must construe an ordinance reasonably to avoid an absurd result." *Lipman v. Town of Lincolnville*, 1999 ME 149, ¶5, 739 A.2d 842, 843.

A&M contends that a state probation office qualifies as either a "general," "business" or "professional" office under section 14-182(b)(1). However, upon remand, the ZBA issued a written decision on March 20, 2008 stating:

> The language of the ordinance prohibits uses not listed in sections 14-182 [and] 14-183. State governmental buildings are not listed. Additionally, there is a separate category for Institutional, which includes municipal buildings; this category would likely be the category under which state buildings would be listed. Thus, the governmental use is not permitted in

3

this zone since it is not listed in 14-182. These uses are explicitly in other zones, such as B-4, B-5.[3]

According to section 14-184, "[u]ses not enumerated in sections 14-182 and 14-183 as either permitted uses or conditional uses are prohibited." While municipal buildings and uses are included in the list of permitted uses in section 14-182, state or federal government buildings and uses are absent. Thus, the City contends that the Ordinance forbids A&M's intended use of the property.[4]

Despite this apparent prohibition on any state governmental use of property in the B-2b zone, A&M correctly notes that the portion of the Ordinance concerning the B-2b zone was adopted in 1988, when local zoning laws were not binding on the State. See 30-A M.R.S. § 4352(6) (1988);[5] see also *Senders v. Town of Columbia Falls*, 647 A.2d 93 (Me. 1994). Because the State would have been exempt from any zoning restriction at the time the relevant sections were adopted, A&M persuasively argues that the absence of any explicit allowance of governmental uses does not lead to the inevitable conclusion that they are disallowed in the B-2b zone. While it also does not mean that the Ordinance necessarily permits such uses, if the court agrees with the City's interpretation of the sections at issue, it must also address the constitutional concerns raised by A&M.

---

[3] In addition to the zones listed by the ZBA, the B-5b and the B-7 zones also explicitly allow for governmental use.

[4] It should be noted that although the intended use of the building at issue here can be classified as "governmental," the structure itself could not be considered a government building because it is owned by a private entity.

[5] The current version of section 4352(6) generally requires the State to comply with zoning ordinances, but allows the Governor to waive restrictions if certain criteria are met. No waiver is presented here.

## C. Past Interpretations

A&M asserts that the City's current interpretation of the permitted uses of the B-2b zone is inconsistent with prior interpretations of the ordinance and that it has been denied the equal protection of the law as a result.

According to A&M, the City has previously allowed governmental uses in the B-2b zone and in other zones even though the ordinance does not expressly permit them. At the first hearing, A&M provided the ZBA with a list of nineteen government offices that it claims are located in those zones, but the list did not include the dates of occupancy for most of those buildings, nor did it provide any information about the ordinance provisions that were in effect at the time the use was approved.[6] At the second hearing, A&M offered additional materials for the ZBA to consider, including public records, to address the deficiency. However, the ZBA refused to take new evidence and instead limited its review to the evidence offered at the first hearing. In its written decision, the ZBA concluded that "[t]here is no record of a pattern of granting such uses in front of the Board." After a careful review of the record, it is impossible to conclude that the evidence compels a different result. It was A&M's burden to show at the first hearing that the ZBA had previously interpreted the ordinance differently, and A&M failed to meet that burden.

---

[6] In addition to the list, Michael Scarks, president of A&M, testified at the hearing that he did not know when the government uses in the list provided by A&M were approved, but stated that "many of them were fairly recent`." He cited as one example, "the offices of the court" (Administrative Office of the Courts) on Presumpscot Street, which is in the B-3 zone according to the list submitted by A&M. The B-3 zone includes general, business and professional offices, § 14-217(a)(2)(a/b), and "county and municipal uses", § 14-217(a)(4)(a), without defining county and municipal use. It does not provide for general governmental use. (The court also notes that the State of Maine Motor Vehicle Registry is located in a building adjacent to the Administrative Office of the Courts.)

The Ordinance (those portions provided as part of the record) does not list State or federal use of buildings in any zone although they are clearly present in a number of areas in the city. Also, the list provided by A&M of government offices in other zones included occupation dates for five of the nineteen offices.

## D. Validity of Restriction

Although A&M is unable to show that the ZBA has treated it unfairly in comparison to others, if the court decides that the City's interpretation of the zoning ordinance was correct and that state or federal governmental uses were in fact prohibited from the B-2b zone, the validity of such a restriction must still be addressed.

For a restriction contained in a zoning ordinance to be valid, it "must bear a substantial relation to public health, safety, morals, or general welfare," and "may not be unreasonable or discriminatory as applied." *LaPointe v. City of Saco*, 419 A.2d 1013, 1015 (Me. 1980). On remand the Board refused to address this issue. Record at p. 178. An ordinance, however, is presumed to be constitutional and it "will not be declared unconstitutional without clear and irrefutable evidence that it infringes the paramount law." *Barnard v. Zoning Bd. of Appeals of Yarmouth*, 313 A.2d 741, 744 (Me. 1974) (quotations and citations omitted).

The restriction contained in section 14-184, which prohibits uses not expressly enumerated in the preceding sections, is not unreasonable on its face. A municipality has legitimate reasons for specifying which uses are or are not appropriate in any given area or zone. Indeed, the Law Court has stated that "[c]ommunities cannot be condemned for seeking such ends as preservation of open space and local 'beauty,' avoidance of heavy traffic congestion and overcrowded housing, maintenance of property values, or even the stabilization of the burdens of spending for municipal services." *Id.* at 745. However, the question raised by A&M here concerns the constitutionality of the restriction as it applies to governmental uses. The City's interpretation of the Ordinance does not prevent only particular governmental uses that perhaps could be determined to have an impact on the surrounding community, e.g.,

6

the county jail, but instead serves to prevent entirely any and all uses of property by state or federal government within the B-2b zone.

It may be that the City has not re-examined the Ordinance since the State became subject to local comprehensive plans, 30-A M.R.S. § 4352(6). Without specific regulation, the more precise issue is whether a blanket prohibition on all state and federal governmental uses, but not municipal,[7] within the B-2b zone vis-à-vis other uses are reasonably related to any legitimate interest that the City may protect through zoning regulation. The court concludes, considering the proposed use here, that it does not.

## IV. DECISION AND JUDGMENT

The clerk will make the following entry as the decision and judgment of the court:

> • The appeal of A&M Partners, LLC is sustained. The case is remanded to the Zoning Board of Appeals for the City of Portland with instructions to approve the application of A&M Partners, LLC for a building permit.

SO ORDERED

October 28, 2008

Thomas E. Delahanty II
Justice, Superior Court

---

[7] "Municipal buildings and uses" are included in the list of permitted institutional uses under section 14-182 of the Ordinance.

JAMES ADOLF ESQ
389 CONGRESS ST
PORTLAND ME 04101

MARSHALL TINKLE ESQ
LAWRENCE CLOUGH ESQ
TOMPKINS CLOUGH HIRSHON & LANGER
PO BOX 15060
PORTLAND ME 04112-5060