MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2016 ME 174
Docket:        Oxf-15-530
Submitted
  On Briefs:   September 29, 2016
Decided:       December 1, 2016

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

FRYEBURG TRUST

v.

TOWN OF FRYEBURG et al.

GORMAN, J.

[¶1]  The Fryeburg Trust appeals from a judgment of the Superior Court (Oxford County, *Clifford, J.*) affirming, pursuant to M.R. Civ. P. 80B, the decisions of the Town of Fryeburg Planning Board and Board of Appeals on the Trust's challenge to a Town decision allowing Fryeburg Academy to use a parcel of land as an outdoor classroom.  The Academy and Town of Fryeburg cross-appeal from the same judgment vacating, also pursuant to M.R. Civ. P. 80B, the Town's decision to allow the Academy to use a building on a second parcel of land to house administrative offices.  The parties challenge the interpretation of the definition of secondary school in Fryeburg's Land Use Ordinance.  We affirm the decision of the Planning Board.

## I. BACKGROUND

[¶2]  The parties do not dispute the facts of this case.  On October 10, 2014, the Academy, a private secondary school, applied to the Planning Board for permits authorizing changes in the use of two parcels of leased land.  The Academy proposed to use one parcel (the Land Lot), which had previously been used for agricultural purposes, to teach—primarily outdoors—environmental science, conservation studies, agricultural studies, physical education, and recreation, and also for related storage.  It proposed to use another parcel (the House Lot), which had previously been used for residential purposes, as offices for its admissions and advancement departments and for related storage.  The Academy asserted that each use was permitted as an educational use pursuant to the Ordinance.

[¶3]  Following a public hearing, the Planning Board approved the Academy's applications for both parcels.  The Planning Board's approvals were based on its conclusions that the proposed uses qualified as secondary school uses pursuant to the Ordinance and were, therefore, allowed in the lots' respective zoning districts.  The Trust, which owns property abutting both lots, appealed from the Planning Board's decisions to the Board of Appeals.  The Board of Appeals denied both appeals.

[¶4]  The Trust filed two timely appeals in the Superior Court, pursuant to M.R. Civ. P. 80B, in which it contended that the Planning Board had committed an error of law in interpreting the definition of secondary school contained in the Ordinance.  The Superior Court affirmed the Planning Board's decision to grant the Land Lot permit, concluding that, pursuant to the Ordinance, the proposed use of the Land Lot was an educational use because classes would be taught there.  The court vacated the Planning Board's decision to grant the House Lot permit, however, based on its conclusion that the proposed use of the House Lot was not an educational use because classes would not be taught there.  The Trust timely appeals from the court's decision affirming the Land Lot permit.  The Academy and Town timely cross-appeal from the court's decision vacating the House Lot permit.

## II.  DISCUSSION

[¶5]  We review local land use decisions "for error of law, abuse of discretion or findings not supported by substantial evidence in the record," and review local interpretations of local ordinances de novo as a question of law.[1]  *Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024 (quotation

---

[1]  Pursuant to M.R. Civ. P. 80B, we review, directly and without deference to intermediate appellate decisions, the record of the last decision maker with de novo decision-making and fact-finding authority.  *Rossignol v. Me. Pub. Employees Ret. Sys.*, 2016 ME 115, ¶ 6, 144 A.3d 1175; *Mills v. Town of Eliot*, 2008 ME 134, ¶¶ 13-16, 955 A.2d 258.  Here, because the Board of Appeals

marks omitted). The characterization of proposed uses in applications for local land use permits presents a "mixed question of law and fact." *Jordan v. City of Ellsworth*, 2003 ME 82, ¶ 8, 828 A.2d 768. Here, the parties dispute whether the Academy's proposed use of each lot falls within the Ordinance's definition of "School, Public or Private Elementary or Secondary" (hereinafter "secondary school").[2] Fryeburg, Me., Land Use Ordinance § 25-17 (June 2014). As always, we first evaluate the plain meaning of the Ordinance and, if the meaning is clear, "need not look beyond the words themselves." *Wister v. Town of Mt. Desert*, 2009 ME 66, ¶ 17, 974 A.2d 903. We construe the terms of an ordinance reasonably, considering its purposes and structure and to avoid absurd or illogical results. *See Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 21, 107 A.3d 621; *Stewart v. Town of Sedgwick*, 2002 ME 81, ¶ 6, 797 A.2d 27.

[¶6] In this case, the Ordinance[3] defines a secondary school as a "place where courses of study which are sufficient to qualify attendance as

---

and Superior Court each acted solely in an appellate capacity, we review the determinations of the Planning Board directly. *See* Fryeburg, Me., Land Use Ordinance § 18-2 (June 2014) (stating that "a hearing of an Administrative Appeal . . . shall be conducted by the Board of Appeals as an appellate review and not *de novo*.").

[2] Secondary schools are permitted with prior authorization from the Planning Board in the zoning districts of the Land and House Lots. Fryeburg, Me., Land Use Ordinance § 5-3.

[3] We note that, during the pendency of this case, the Town amended its Ordinance to expand the definition of "school." The Ordinance in effect at the time of the Planning Board's decision, however, is controlling in this case. *See* 1 M.R.S. § 302 (2015); *George D. Ballard, Builder, Inc. v. City of Westbrook*, 502 A.2d 476, 484 (Me. 1985). The text of the amended Ordinance is not before us.

compliance with State compulsory education requirements for grades Kindergarten through 12 are taught." Fryeburg, Me., Land Use Ordinance § 25-17. The Ordinance does not provide any other guidance concerning this definition.

A. The Land Lot

[¶7] We first consider the Trust's argument regarding the use of the Land Lot as an outdoor classroom. It contends that the proposed use of the lot by the Academy is not permissible pursuant to the Ordinance because "[n]o complete courses will be taught [there], much less all mandated courses."

[¶8] Although the language of the Ordinance is clear that a secondary school is a "place where courses of study . . . are taught," the remainder of the definition is less clear. Fryeburg, Me., Land Use Ordinance § 25-17. The clause on which the Trust bases its contention states that the courses taught at a place must be "sufficient to qualify attendance as compliance with State compulsory education requirements for grades Kindergarten through 12" in order for that place to be deemed a school. Fryeburg, Me., Land Use Ordinance § 25-17. The Ordinance does not otherwise define or explain the terms of the clause. The State of Maine requires that secondary schools include "career and education development, English language arts, health

6

education and physical education, mathematics, science and technology, social studies, visual and performing arts and world languages" in their programs of instruction.  20-A M.R.S. §§ 4721(1), 6209(2) (2015).

[¶9]  Reading the plain language of the Ordinance together with the State educational requirements, the Academy's proposed use of the Land Lot to teach courses, including physical education and science, to students attending a secondary school fits squarely within the definition in question. Nothing within the text of the Ordinance requires that *all* of the courses required by the State or the *entirety* of those courses be taught on each piece of property or in each building where a secondary school operates. *See* Fryeburg, Me., Land Use Ordinance § 25-17.  Reading the Trust's suggested restrictions into the Ordinance would create an absurd result, and we interpret the language of ordinances to avoid such results.  *See Dickau*, 2014 ME 158, ¶ 21, 107 A.3d 621 ("[W]e may reject any construction that . . . creates absurd, illogical, unreasonable, inconsistent, or anomalous results if an alternative interpretation avoids such results.")  For this reason, we affirm the judgment of the Planning Board, as affirmed by the Superior Court.

B.     The House Lot

[¶10]  We next consider the Academy's and Town's argument regarding the use of the House Lot for school administrative offices.  They contend that the proposed use of the Lot by the Academy's admissions and advancement departments is so integral to the functioning of the school that it is indistinguishable from the school and, therefore, permissible under the Ordinance.  We agree.

[¶11]  Here, the Ordinance defines secondary school, in relevant part, as a "place where courses of study . . . are taught."  Fryeburg, Me., Land Use Ordinance § 25-17.  Although a crabbed reading of that language could preclude the Planning Board from allowing the Academy's proposed use of the House Lot, such an interpretation would also lead to an illogical result. *See Dickau*, 2014 ME 158, ¶ 21, 107 A.3d 621.  Here, the Planning Board determined that schools comprise not only classrooms and teachers but also administrators and administrative offices, which are integral to the functioning of the school.  We need not look beyond the plain language of the Ordinance's definition of secondary school to conclude that the Planning Board's determination is not clearly erroneous. *See Wister*, 2009 ME 66, ¶ 17, 974 A.2d 903; *see also Dickau*, 2014 ME 158, ¶ 20, 107 A.3d 621 ("A plain

language interpretation should not be confused with a literal interpretation"); *Jordan*, 2003 ME 82, ¶ 10, 828 A.2d 768 ("[W]e are not required to disregard common sense when we interpret municipal ordinances."); *Underwood v. City of Presque Isle*, 1998 ME 166, ¶ 11, 715 A.2d 148 (concluding that "the marketing aspect" of an agricultural school was "subordinate to and an integral part of the [school]").

[¶12]   Although whether a proposed use falls within the terms of a zoning ordinance is a question of law that we review de novo, nevertheless, "in certain factual situations, even though the terms of the zoning ordinance are . . . defined by the Court as a matter of law, whether or not the proposed structure or use meets the definition in the application thereof may be a matter of fact for initial Board determination." *Goldman v. Town of Lovell*, 592 A.2d 165, 168 (Me. 1991) (quotation marks omitted).   Where the determination of whether a particular activity is part of a more comprehensive use is premised on a relevant factual determination made by the Planning Board—e.g., as here, whether the proposed use of the lot for the school's administrative offices is part of a secondary school's educational functions—we review the Board's decision for clear error. *See Boivin v. Town of Sanford*, 588 A.2d 1197, 1200 (Me. 1991).   We afford substantial deference

to the Planning Board's ultimate characterization of a proposal under a local land use ordinance. *Jordan*, 2003 ME 82, ¶ 9, 828 A.2d 768.

[¶13] The Planning Board interpreted the Ordinance to mean that a "school" is more than just a collection of classrooms and then found that the Academy's proposed use fell within this more fulsome view of "school." A review of the administrative record shows that the Planning Board did not clearly err in so determining. We therefore vacate the judgment of the Superior Court and remand with instructions to affirm the decision of the Planning Board.

The entry is:

> Judgment of the Superior Court affirmed with respect to the Land Lot. Judgment of the Superior Court vacated with respect to the House Lot and remanded with instructions to affirm the decision of the Planning Board.

**On the briefs:**

Edward L. Dilworth, III, Esq., Dow's Law Office, P.A., Norway, for appellant Fryeburg Trust

Mary E. Costigan, Esq., Bernstein Shur, Portland, for cross-appellant Fryeburg Academy

The Town of Fryeburg did not file a brief

Oxford County Superior Court docket numbers AP-2015-03 & AP-2015-04
FOR CLERK REFERENCE ONLY