STATE OF MAINE                                    SUPERIOR COURT

Cumberland, ss.                                        Civil Action


MARK TOMASINO and          )
VALERIE TOMASINO           )
                           )
        Plaintiffs         )
                           )
                           )          Docket No. CUMSC-AP-18-60
    v.                     )
                           )
TOWN OF CASCO              )
                           )
        Defendant          )
                           )
    and                    )
                           )
COLLEEN DEMIRS, Trustee,   )
Lake Shore Realty Trust    )
                           )
        Party-in-interest  )


DECISION AND JUDGMENT

This case has returned to the court after being remanded to the Town of Casco

Zoning Board of Appeals (ZBA) for further findings. The parties have filed a

Supplemental Record that includes certain stipulations as well as the ZBA's Decision

on Remand dated April 11, 2019 and the minutes of the ZBA's April 11, 2019 meeting

at which the ZBA reached its decision. The decision on remand and the meeting

minutes are now in the record as Record Documents 20 and 21. The parties have all

filed supplemental briefs and the Plaintiffs have filed a supplemental reply brief.

To expedite resolution, the court elects to decide the case without oral

argument. *See* M.R. Civ. P. 7(b)(7).

REC'D CUMB CLERKS OFC
JUN 17 '19 PM 3:19

The background and history of the case are summarized in the court's Order of Remand dated March 11, 2019 and will not be repeated here.

The ZBA's decision on remand has clarified and corrected the ambiguity resulting from the absence of specific findings sufficient to show the Board's reasons for granting the administrative appeal taken by party-in-interest Colleen Demirs as Trustee of Lake Shore Realty Trust ["the Trust"] from the issuance of the tree cutting permit to the Plaintiffs, Mark and Valerie Tomasino.

The decision on remand contains both factual findings and legal conclusions. The factual findings are were that two of the three trees at issue—the 15" beech and the 20" beech—are located partly on the Trust's side of the easement and partly on the Trust's property outside the easement, and that the easement did not make it clear whether the Tomasinos had the right to cut the third tree—the 12" maple—even though it is located entirely within the easement. Record Document 20, at 1.

Based on these findings, the Board concluded that "the permit was not properly issued because two of the trees were located partially outside the easement area and on property owned exclusively by Lake Shore Realty Trust and it was unclear whether the Tomasinos had the right to remove the third tree without the agreement of Lake Shore Realty Trust." *Id.* at 2.

Implicit in this conclusion is the Board's view that the Tomasinos have no right to remove the two beech trees that straddle the boundary between the easement and the Trust property, and that the Tomasinos had not shown that they have the right to remove the maple located entirely within the easement.

2

The Tomasinos in their initial supplemental brief and in their supplemental reply brief challenge the decision on remand on three grounds:

- The ZBA's factual finding that the two beech trees straddle the boundary must be set aside because it has no support in the record.

- The ZBA erred as a matter of law in deciding that the Tomasinos have no right to cut trees located partially in the easement and partly on the Trust property.

- The ZBA erred as a matter of law in deciding that the Tomasinos' right to remove the maple located entirely within the easement is unclear.

The Trust and the Town say that the ZBA's findings about the location of the three trees in relation to the easement are based on the Tomasinos' own survey plan, and that the ZBA's decision that the Tomasinos had not demonstrated a legal right to remove the trees was appropriate in light of the language of the easement and the state of the law regarding an easement holder's right to remove trees entirely or partly within the easement.

However, the Tomasinos make a valid point about ZBA having misunderstood the location of one of the three trees—the 15" beech. As noted in the court's Order of Remand, the Tomasinos' survey plan depicts the smaller beech as being located within the easement. *See* Order of Remand at 2 n.1. *See* Record at 34. The Tomasinos themselves initially portrayed all three trees as being located partly within the easement. *See* Plaintiffs Mark and Valerie Tomasinos' Rule 80B Brief at 2. Their Supplemental Brief acknowledges that their attorney was "confused" and attaches a

3

new exhibit that plainly shows the maple and the smaller beech tree to be located within the easement. *See* Plaintiffs Mark and Valerie Tomasinos' Supplemental Rule 80B Brief at 2.

Accordingly, the ZBA's finding that the smaller beech tree is located partly within the easement is not supported by the record, because the Tomasinos' survey plan that the finding relies upon depicts the trunk of the tree as being located entirely within the easement. *See* Record at 34.

Still, this error does not necessarily invalidate the ZBA's decision. The court infers that, if the ZBA had correctly found that the smaller beech was located entirely within the easement, it would have treated the beech as it did the maple. The court further infers that the ZBA still would have upheld the Trust's appeal on the ground that the Tomasinos had not established that they have the right to remove trees located on the Trust's property, regardless of whether the trees were either entirely within the easement or partially within the easement.

Thus, the ultimate question in this case is whether the court should uphold the ZBA's conclusion that the Tomasinos had not established their right to remove the trees. The Tomasinos contend that the law clearly gives them the right to remove all three trees. They contend that there should be no doubt about the maple and the smaller beech because they are entirely within the easement, and even if their right to remove the larger beech is limited because it is partially outside the easement, it should be removed in any event because it is diseased.

4

The Town and the Trust respond by noting that the Tomasinos' easement does not specify that it includes the right to remove trees; that it is undisputed that one of the three trees is not located entirely within the easement, and that the Tomasinos' rights are not so well-defined that the ZBA was compelled to find and conclude that they have the right to remove all three trees.

Whether the Tomasinos have the right to remove the trees presents a mixed question of law and fact. The legal components consist of the language of the Tomasinos' deeded right of way and also Maine law on the right of a dominant estate to remove trees and other obstacles from within a right of way. The factual component consists of the language of the easement deed to the extent of any ambiguity, and also the effect of the trees upon the Tomasinos' ability to use the right of way.

Although the Tomasinos assert that they have an absolute right to remove the trees, neither the record before the ZBA nor Maine law fully supports their contention. Their deed is silent on whether their rights in the six-foot strip on the Trust's property includes the right to cut trees within the strip. Maine law appears to provide that the owner of the dominant estate may take reasonable steps to make the right of way suitable for use. *See Somes v. Morissette*, 2001 ME 152, ¶10, 782 A.2d 764 ("The reasonableness of improvements or repairs made by the owner of the dominant estate on an easement for a right of way is a question of fact for the trial court.").

The Maine cases primarily relied on by the Tomasinos are not particularly germane. *See* Plaintiffs Mark and Valerie Tomasinos' Supplemental Rule 80B Brief at 7-8, *citing Phillips v. Gregg*, 528 A.2d 151 (Me. 1993) and *Rutland v. Mullen*, 2002

5

ME 98, 798 A.2d 1104. The issue in both *Phillips* and *Rutland* was whether the rights of way involved in those cases had been abandoned as a result of non-use, and in *Phillips* there was evidence that the non-use had lasted long enough to allow trees to grow in the right of way. The Law Court decided that non-use of a right of way easement, even if it lasts so long that trees grow, does not in and of itself establish that the right of way has been abandoned. Whether and to what extent the dominant estate owners had the right to remove trees from within the right of way was not discussed in either case.

The very fact that the briefs of both the Tomasinos and the Trust cite primarily to cases from other jurisdictions regarding the Tomasinos' right to remove trees partially outside the easement bolsters the ZBA's decision not to adjudicate what is fundamentally a matter of real estate law.

As the Town and the Trust point out, because the permit covers all three trees, the Tomasinos had the burden to show that they have the right to remove all three. Based on the record and applicable law, the ZBA was not compelled to find or conclude that the Tomasinos had met their burden.

For these reasons, it is hereby ORDERED and ADJUDGED as follows:

1. The Plaintiffs' appeal is denied.

2. The Decision Of Casco Zoning Board of Appeals on Remand From The Superior Court dated April 11, 2019, is hereby affirmed.

3. Judgment is hereby awarded to Defendant Town of Casco, with costs of court.

6

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this

Order by reference in the docket.

Dated June 17, 2019

_____

A. M. Horton, Justice

Entered on the Docket: 6/20/19

STATE OF MAINE                                    SUPERIOR COURT

Cumberland, ss.                                   Civil Action

MARK TOMASINO and            )
VALERIE TOMASINO             )
                             )
        Plaintiffs           )
                             )
                             )          Docket No. CUMSC-AP-18-60
     v.                      )
                             )
TOWN OF CASCO                )
                             )
        Defendant            )
                             )
     and                     )
                             )
COLLEEN DEMIRS, Trustee,     )
Lake Shore Realty Trust      )
                             )
        Party-in-interest    )

## ORDER OF REMAND

This case presents an appeal under Rule 80B of the Maine Rules of Civil Procedure from the denial of Plaintiffs' application for a permit to cut down three trees located partly or entirely within a right of way benefiting their property. The parties, including the party-in-interest, have all filed briefs and the case is ready for decision. The court elects to decide the case based on the record without oral argument. *See* M.R. Civ. P. 7(b)(7).

For the reasons stated below, this appeal is remanded to the Town of Casco Zoning Board of Appeals for further findings on its Administrative Appeal Decision on Reconsideration dated October 15, 2018.

ATTORNEY FOR PLAINTIFFS:
CHRIS NEAGLE, ESQ.
ATTORNEY FOR DEFENDANT:                    1
NATALIE L. BURNS, ESQ.
ATTORNEY FOR PARTY IN INTEREST:
DAVID A. GOLDMAN, ESQ.

REC'D CUMB CLERKS OFC
MAR 11 19 PM 2:53

*Background*

Plaintiffs Mark and Valerie Tomasino ["the Tomasinos"] own property at 9 Kane Holmes Lane, Casco. They purchased their property in 2016. *See* Record at 48. Party-in-interest Colleen Demirs owns adjacent property at 12 Kane Holmes Lane. Colleen Demirs and Timothy Demirs purchased the property in 1997 and deeded it in 2000 to Colleen Demirs as Trustee of the Lake Shore Realty Trust. *See* Record at 51-52. The property is hereinafter referred to as the Demirs property.

A 12-foot wide access easement that the Tomasinos use as a driveway runs along the boundary between the Tomasino property and the Demirs property. Six feet of the access easement lie upon and burden the Tomasinos' property and the other six feet lie upon and burden the Demirs property.

In June 2018, Mark Tomasino filed an application for a permit under the Town of Casco Shoreland Zoning Ordinance to cut three trees located in or partly in the Demirs side of the access easement. *See* Record Doc. 2, at 15.

Precisely where the trunks of the three trees are located in relation to the easement is not entirely clear from the record, but it appears that at least one and perhaps all three trees straddle the easement boundary on the Demirs side of the easement. *See* Record at 50 (Exhibit E to Attorney Neagle's memorandum to the ZBA).[1]

---

[1] Exhibit E is a survey that identifies the trees and their location as follows:
- 15" beech, 1' into easement
- 12" maple, 1.5' into easement
- 20" beech, 0.5' into easement.

2

On July 3, 2018, the Town's code enforcement officer ["CEO"] issued a shoreland zoning permit to Mr. Tomasino authorizing the removal of the three trees. *See* Record at 19. The permit authorized Mr. Tomasino to remove trees located at 9 Kane Holmes Lane, although the trees are in fact located on the Demirs property at 12 Kane Holmes Lane.

Colleen Demirs filed an administrative appeal form on August 1, 2018, contending that the permit should not have been issued because it involved work on property not by the Tomasinos. *See* Record Doc. 4, at 20. On August 6, 2018, Ms. Demirs also filed an Application for Variance or Appeal, a document referred to in the record as a cover sheet. *See* Record Doc. 5, at 24.

According to the Town ordinance, administrative appeals are heard by the Town's Zoning Board of Appeals "ZBA"). *See* Record Doc. 1, at 10 (Town of Casco Shoreland Zoning Ordinance § 215-9.36.G(8)(a)(1)).

On September 13, 2018, a land use consultant retained by the Tomasinos sent an objection to the Demirs appeal, asserting that Colleen Demirs had failed to file a complete appeal and that the Tomasinos had the right, title and interest necessary to

---

The survey states that the stated "into easement" distances are measured from the easement boundary to the center of the trees. *See id.* From that information, it be inferred that the survey depicts all of the trees as being located on the Demirs property, and indicates that the trunks of the 15" beech and 12" maple are located entirely within the easement, whereas the trunk of the 20" beech is located partly within the easement but mostly on the Demirs property outside the easement.

Another survey, also said to have been prepared for the Tomasinos, was put into the record by the Demirs's attorney. *See* Record at 67 (Exhibit D to attorney Goldman's memorandum to ZBA). This survey, prepared by the same surveyor and bearing the same date, shows the trees at different distances into the easement. *See id.* The discrepancy between the distances listed in the two surveys is not explained in the record.

3

support the permit they had been issued, because all three trees were located within the access easement. *See* Record Doc. 6, at 25.

The Demirs administrative appeal came before the Town's ZBA at its September 17, 2018 meeting. The minutes of the meeting indicate that two motions to hear the appeal were made and neither passed. *See* Record at 37. The minutes reflected discussion about whether the Demirs appeal was timely filed. *See* Record at 37-38. The minutes also reflect discussion about the need to correct the property reference in the permit. The ZBA evidently decided that the permit could not be corrected to show the trees were on the Demirs property unless the ZBA took up the Demirs appeal. *See id.*

Ultimately, the Board's discussion of the Demirs appeal ended with no action being taken. *See id.* The minutes quote the Tomasinos' representative as saying "he doesn't believe the Board isn't going to hear this; you didn't make a Motion to table it, then you have essentially denied the application." Record at 37.

Even though the ZBA did not vote to do anything with the Demirs administrative appeal at the September 17, 2018 meeting, the ZBA later issued a decision indicating that the Board did not believe the Demirs appeal was timely "based on the cover sheet not being submitted at the time of submission of [the] Administrative Appeal form." The ZBA in its decision found that the cover sheet had been submitted August 6, 2018, outside the 30-day deadline for the appeal.

The parties have stipulated that the Demirs filed the initial Administrative Appeal documents, *see* Record Document No. 4 at 20-23 on August 1, and filed the

4

appeal cover sheet on August 6, *see* Record Document No. 5 at 24 on August 6. *See* Stipulated Facts ¶¶ 1-2, docketed Jan. 16, 2019. The parties also stipulated that the ZBA's Administrative Appeal Decision was prepared by the Board secretary after the September 17 meeting and signed by Board members "who came individually at different times to the Town Office for that purpose." *See* Stipulated Facts ¶ 3, docketed Jan. 16, 2019.

In a memorandum to the ZBA dated September 26, 2018, nine days after the meeting, the CEO advised the Board that the applicable ordinance did not require a party taking an administrative appeal to file the cover sheet that the Demirs had omitted to file on August 1, 2018. *See* Record at 43; *see also* Record at 10 (Town of Casco Shoreland Zoning Ordinance § 215-9.36.G(8)(a)).

The CEO's memorandum noted that he had not advised the Demirs about the need for the cover sheet and requested the ZBA to reconsider its decision pursuant to the ordinance provision allowing requests for reconsideration to be filed within 10 days of the decision. *See* Record at 43-44; *see also* Record at 11 (Town of Casco Shoreland Zoning Ordinance § 215-9.36.G(8)(d)).

At this point, attorneys for both the Tomasinos and the Demirs entered the picture and sent the ZBA memoranda with exhibits. *See* Record at 45-84.

The Demirs's attorney's memorandum noted that the trees at issue are on the Demirs property and that the traveled gravel way on the face of the earth does not exactly follow the easement, in part to avoid these and other trees. *See* Record at 58.

5

The Tomasinos' attorney's memorandum asserted that the ZBA lacked authority to reconsider the Demirs appeal and that the permit had properly been issued and was valid.

Colleen Demirs's administrative appeal came before the ZBA for reconsideration at its October 15, 2018 meeting. The minutes of the meeting reflect that the parties' attorneys addressed the Board and the Board asked questions of Mr. Tomasino and Mr. Demirs. Record at 90-95. The CEO also participated. Eventually, the Board began deliberations. A Board member asked the CEO about the diseased tree and the CEO indicated that he would issue a permit to cut a tree located partly or entirely within the easement if it was shown that the tree was in danger of falling and damaging the Tomasinos' property. *See* Record at 95.

A Board member moved that the Board approve the Demirs appeal "to stay the permit." The Board passed the motion by a vote of 3-0. *See* Record at 95.

The ZBA decision issued after the October 15, 2018 meeting indicated: "Based on the testimony and documents submitted, the Board determined that the Administrative Appeal be granted and no trees be cut pursuant to the building permit issued." Record at 96. The Board's October 15 decision contained findings of fact, but contained no findings about where the three trees are located in relation to the parties' properties or in relation to the 12-foot wide easement.

The parties have stipulated, as they did regarding the ZBA's September 17 decision, that the Board's decision dated October 15 was prepared after that meeting

6

and signed separately by the Board members at the Town office. *See* Stipulated Facts ¶ 3, docketed Jan. 16, 2019.

After the ZBA upheld the Demirs administrative appeal, the Tomasinos initially sought land use mediation pursuant to 5 M.R.S. § 3341, which provides for a stay of the applicable appeal deadline for up to 120 days pending the mediation process. *Id.* § 3341(5). The mediation did not transpire after the Town exercised its statutory right not to participate. *See id.* § 3341(8).

Thereafter, the Tomasinos commenced this Rule 80B appeal.

*Standard of Review*

As the parties challenging the decision of the ZBA, the Tomasinos have the burden to show that the decision should be set aside due to an error of law, an abuse of discretion, or findings not supported by substantial evidence in the record. *See Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024. Because the interpretation of a municipal ordinance presents a question of law, the court is to review the ZBA's interpretation of the applicable ordinance de novo. *See Roberts v. Town of Phippsburg*, 642 A.2d 155, 156 (Me. 1994) (citation omitted). On the other hand, review of the Board's factual determinations is more deferential, the question on review being whether those determinations are supported by substantial evidence in the record. *See Jordan v. City of Ellsworth*, 2003 ME 82, ¶ 8, 828 A.2d 768.

The substantial evidence standard of review requires the court to examine the entire record to determine whether the ZBA could have rationally decided as it did, based on the facts presented to it. *See Ryan v. Town of Camden*, 582 A.2d 861, 863 (Me.

7

1991). Substantial evidence is evidence that a reasonable mind could accept as sufficient to support the conclusion reached. *See Cheney v. Unemployment Ins. Comm'n*, 2016 ME 105, ¶ 6, 144 A.3d 45; The court "may not substitute its judgment for that of the municipal body, but is limited to determining whether, from the evidence of record, facts could reasonably have been found by the zoning board to justify its decision." *Mack v.Municipal Officers of Cape Elizabeth*, 463 A.2d 717, 720 (Me. 1983). The reviewing court is not permitted to substitute its own judgment for that of the board. *Cheney*, 2016 ME 105, ¶ 6, 144 A.3d 45.

However, a court's ability to review a ZBA's factual findings in order to decide whether they are supported by substantial evidence presumes that the ZBA has made factual findings to explain the factual rationale for its decision.

*Discussion*

The Tomasinos' Rule 80B complaint identifies multiple issues, *see* Rule 80B Appeal ¶¶20-28, some of which appear to assert violations of Maine's Freedom of Access (FOAA) law, *see* 1 M.R.S. §§ 401 *et seq.* As the Town's brief points out, however, alleged FOAA violations are not cognizable as independent claims in a Rule 80B appeal. *See Dubois v. Town of Arundel*, 2019 ME 21, ¶ 5, ___ A.3d ___, ___ ("Rule 80B is not the proper mechanism to assert a FOAA claim. However, as the Tomasinos point out in their reply brief, a municipal board's acts or omissions in violation of the FOAA may be relevant to whether the board's decision should be upheld or vacated as a result of a Rule 80B appeal. Accordingly, the court will consider the Tomasinos' arguments that the Board's actions were contrary to the FOAA in several respects,

8

not for purposes of FOAA itself but for purposes of deciding whether the Board's decision in favor of the Demirs should be affirmed or vacated.

The two issues that the court deems appropriate for determination in this case are:

- Whether the ZBA's reconsideration was valid? If the ZBA should not have reconsidered its initial decision, presumably the initial decision would be reinstated.

- Whether the ZBA's decision upholding the Demirs's administrative appeal and effectively vacating the Tomasinos' permit was supported by sufficient findings to enable judicial review? The answer to this question determines whether review should go further and examine the merits of the decision upon reconsideration.

1. *The ZBA Decision to Reconsider Was Valid*

The Tomasinos make two arguments against the ZBA's reconsideration of its decision on the Demirs's Administrative Appeal. First, they say the CEO lacked standing to request reconsideration. Second, they say there was no decision to reconsider because the Board took no action on the Demirs's administrative appeal at the September 17, 2018 meeting.

As to the CEO's standing, the relevant ordinance provision says simply that requests to reconsider must be made within 10 days of the ZBA decision. *See* Record

9

at 11 (Town of Casco Shoreland Zoning Ordinance § 215-9.36.G(8)(d)). The ordinance does not limit who may make such a request.

The Tomasinos' contention that the Town of Casco CEO lacked standing to recommend reconsideration relies in large part on the 1985 Superior Court decision in *Tremblay v. Inhabitants of York*, 1985 Me. Super. LEXIS 275 (Yor. Cty. Oct. 3, 1985). However, *Tremblay* involved a code enforcement officer's attempt to pursue a Rule 80B appeal in court from the decision of the planning board for the municipality where the code enforcement officer was employed. *See id.*, 1985 Me. Super. LEXIS 275 at *2-3. The Superior Court concluded that a municipal code enforcement officer could not be deemed a "party" to the underlying proceeding for purposes of having standing to sue under Rule 80B. *See id.*, 1985 Me. Super. LEXIS 275 at *9-10. This case is distinguishable, if only because the Town of Casco CEO is not a party in this Rule 80B appeal.

Rather, the question is whether the Town of Casco ZBA was precluded from reconsidering its decision because the initial request for it to do so came from the Town CEO as opposed to Colleen Demir or any aggrieved party. As the Demirs brief points out, nothing in the ordinance limits who may request reconsideration, and the statute on which the ordinance provision is based does not require that a request even be made in order for a zoning board of appeals to reconsider a decision. *See Toomey v. Town of Frye Island*, 2008 ME 44, ¶¶9-10, 943 A.2d 563 (the 10-day time limit for requests to reconsider in 30-A M.R.S. § 2691(3)(F) did not preclude zoning board of appeals from reconsidering a decision within the 45-day time limit without a request

10

having been made). For two separate reasons—because the ZBA could have reconsidered its decision even without a request to do so, and because the ordinance does not limit who can request reconsideration—the ZBA was not prevented from reconsidering the initial decision.

The Tomasinos' other argument against reconsideration—that the ZBA had not made any decision that could be reconsidered—is contrary to the evidence. Admittedly, the minutes of the September meeting do not indicate that the ZBA voted on any action, but the plain and undisputed fact is that the ZBA then issued a written decision to the effect that the Demirs's administrative appeal was untimely. *See* Record at 41. The Tomasinos contend that the ZBA's September 17 decision was invalid because it was not prepared and signed at the meeting, but nothing in either the FOA or the ZBA statutes or the Town's ordinance required the decision to be typed and signed at a public meeting.

On the other hand, a ZBA's written decision does have to reflect the board's action at a lawful public meeting, and the Tomasinos are correct that the Board's September 17 written decision indicates that the Board made a determination that the meeting minutes do not reflect. *See* Plaintiffs Mark and Valerie Tomasino's Rule 80B Brief at 5. Thus, the ZBA's written decision of September 17 was indeed deficient because it does not reflect what happened at the September 17 public meeting, but that fact actually justifies the Board's reconsideration decision. As the Town's brief points out, "[t]he ZBA's September 17 decision resulted in confusion as to exactly what the Board had, and had not done with its initial decision." Town of Casco's Rule 80B Brief

11

at 6. The clear disconnect between the Board's failure to act at the meeting and the action reflected in the written decision virtually compelled the entire matter to be revisited.

> 2. *The Board's Decision on Reconsideration Lacks Findings Sufficient to Enable the Court to Determine Why the Board Upheld the Administrative Appeal*

Having decided that the ZBA's vote to reconsider was valid, the court would ordinarily proceed to review the ZBA's October 15 decision on reconsideration. However, the court has to address the threshold question of whether the decision enables it to be subjected to judicial review. None of the parties' briefs addresses this issue, and none suggests that a remand for further findings is appropriate. Even so, the court has an independent obligation to determine whether judicial review of the Board's decision is possible.

The ZBA's Administrative Appeal Decision on Reconsideration contains findings in eight numbered paragraphs and conclusions in one subsequent paragraph, but the findings do not explain why the Board decided as it did. *See* Record Doc. 14, at 96.[2] It seems clear from the meeting minutes, and the parties appear to assume,

---

[2] The minutes of the meeting indicate that during the Board's deliberation phase, one of the Board members "moves findings of fact as follows:

> 1. We heard from both sides what it comes down to was the permit issued properly with the Demirs' property as the address on the permit to cut three trees that aren't fully in the right-of-way, but partially in the right-of-way.
> 2. We have established that there is a 12' wide easement in the Deeds of both parties and both parties agree to that.
> 3. The trees are partially on the Demirs property.
> Record at 95A.

However, the minutes do not reflect any second or discussion on that motion. Instead, the minutes say that the same board member "moves to approve the Administrative Appeal filed by the Demirs to stay the permit to allow the trees to be cut by the Tomasinos on the Demirs['] side of the easement." *Id.* That motion was seconded. *Id.* The minutes then paraphrase the Board's discussion on the seconded motion

12

that the ZBA upheld the Demirs Administrative Appeal because it decided that the Tomasinos did not have sufficient right, title and interest in the three trees to justify allowing them to take down the trees. But the Board decision does not say where the trees are located. It does not say the trees are on the Demirs property.

The absence of any findings at all in the Board's October 15 decision regarding the location of the trees in relation to the parties' properties and particularly in relation to the access easement leaves this court uncertain about why the Board upheld the Demirs appeal. Was it because the Board determined that the trees were within the easement on the Demirs side of the easement and the Tomasino had no right to cut trees on the Demirs side of the easement? Was it because the trees were straddling the easement boundary, i.e., partly in the easement and partly on the Demirs's property outside the easement and the Board decided that the Tomasinos could not cut trees partly inside the easement and partly on the Demirs property outside the easement? Or did the Board uphold the appeal because the permit incorrectly listed the three trees as being located at the Tomasinos' street address? The minutes of the September 17 and October 15 meetings reflect individual comments by Board members on all three of these possible alternative grounds for upholding the Administrative Appeal.

---

and record that the Board voted 3-0 in favor of the motion. What is unclear is whether the Board approved the Board member's initial motion regarding findings as well as the same member's second motion. The fact that the Board's written decision does not incorporate the three findings proposed in the first motion leads the court to infer that the vote was only on the second motion.

13

The Law Court has more than once held that when a municipal board's decision does not state the basis for it or set forth the factual findings underlying it, the appeal must be remanded for further findings. *See Carroll v. Town of Rockport*, 2003 ME 135, ¶¶30-31, 837 A.2D 148 (zoning board of appeals decision lacked sufficient findings for judicial review); *Widewaters Stillwater Co. v. Bangor Area Citizens Organized for Responsible Development*, 2002 ME 27, ¶¶9-12, 790 A.2d 597 (planning board decision not supported by sufficient findings to enable judicial review).

In *Carroll*, the court noted, "The Board of Appeals secretary's paraphrasing [in the meeting minutes] of the reasons given by . . . the Board members for their votes . . . are not findings." 2003 ME 135, ¶31, 837 A.2D 148. Such paraphrasing of individual comments in the minutes is all that the record in this case contains to explain why the Board decided to uphold the Administrative Appeal.

IT IS HEREBY ORDERED: This appeal is hereby remanded to the Town of Casco Zoning Board of Appeals for such further findings and conclusions as will explain why the Board decided to uphold the Administrative Appeal on reconsideration. The court retains jurisdiction, meaning that no new Rule 80B action needs to be commenced.

The court assumes that the Board will be able to address this manner so as to return the case to the court within 90 days. The parties will report to the court if the case has not returned to this court within 90 days.

14

Upon the filing of the supplemental record reflecting the Board's action on remand and any further filings made by the parties during the remand, the following further briefing schedule applies:

Plaintiffs may file a supplemental brief within 20 days of the filing of the supplemental record. The Town and Party-in-interest may file supplemental briefs within 40 days of the filing of the supplemental record. Plaintiffs may file a reply brief within 50 days of the filing of the supplemental record. The court will thereafter decide whether to schedule oral argument.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated March 11, 2019

A. M. Horton, Justice

Entered on the Docket: 3/12/19

15